JOHN PAUL AGEE, Employee-Appellant v. THOMASVILLE FURNITURE PRODUCTS, Employer, and LIBERTY MUTUAL INSURANCE CO., Carrier, Defendants-Appellees

No. COA94-813

(Filed 6 June 1995)

1. **Workers' Compensation § 415, 416 (NCI4th)— master carver—injury to hand and elbow—appeal to full Commission—evidence not reconsidered—new evidence not allowed**

   There was no abuse of discretion in a workers' compensation action in which a master carver sought compensation for an injury to his elbow where plaintiff contended that the full Industrial Commission erred by failing to review the deputy commissioner's opinion and award *de novo* and by failing to allow plaintiff's motion for additional evidence. N.C.G.S. § 97-85 provides that the full Commission shall review the award and, if good ground be shown, reconsider the evidence and receive further evidence; whether good ground be shown is within the discretion of the Commission. Plaintiff has shown no abuse of discretion nor pointed to any facts indicating that the full Commission failed to make a thorough review of the deputy commissioner's opinion and award.

   **Am Jur 2d, Workers Compensation § 687.**

2. **Workers' Compensation § 460 (NCI4th)— master carver— maximum medical improvement—Commission's findings supported by evidence**

   The evidence in a workers' compensation hearing involving plaintiff's wrist and elbow injuries supported the Industrial Commission's finding that plaintiff's wrist had reached maximum medical improvement and the inferences that defendant employer had suitable work available for plaintiff, and that his wage loss after that date was not due to his compensable wrist

injury. Although plaintiff contended that the Commission should have included a finding that he was entitled to temporary total disability benefits since no evidence existed that defendant had a suitable job available, that the evidence did not support the finding that his wrist had reached maximum medical improvement, and that he sustained a wage loss due to the wrist injury, the evidence showed that plaintiff, a master carver employed by defendant, was released to return to work on 18 May 1992; the doctor's office notes indicate that plaintiff's wrist was doing very well and that any limitations were due to an elbow injury; no further treatment was offered for plaintiff's wrist; plaintiff sustained a noncompensable injury on the eve of his return to work; he was given four weeks leave; he did not return to work when that leave expired and was terminated by defendant employer; and plaintiff continued to see his doctor, who indicated on 16 July that plaintiff's wrist had reached maximum medical improvement.

**Am Jur 2d, Workers' Compensation § 709.**

3. **Workers' Compensation § 454 (NCI4th)— master carver— elbow injury—not the result of accident arising out of employment—finding supported by evidence**

The Industrial Commission did not err by concluding that plaintiff's elbow injury was not the result of an accident arising out of and in the course of his employment and that he was not entitled to compensation and treatment for the injury where the Commission, which is the sole judge of the weight and credibility of testimony, found that plaintiff's testimony was not credible, there was competent evidence to support the finding that plaintiff did not injure his elbow in an April 1991 accident as claimed, and there was competent evidence to support the finding that his testimony regarding the cause of an alleged September 1991 accident was not credible.

**Am Jur 2d, Workers' Compensation §§ 611-614.**

Judge EAGLES dissenting.

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 1 May 1994 and amended 18 May 1994. Heard in the Court of Appeals 19 April 1995.

*Donaldson & Horsley, P.A., by Kathleen G. Sumner, for plaintiff-appellant.*

*Brinkley, Walser, McGirt, Miller, Smith & Coles, L.L.P., by G. Thompson Miller, for defendants-appellants.*

WALKER, Judge.

Plaintiff injured his wrist on 30 April 1991 while working as a master carver for defendant employer. He reported this injury to the company nurse the next day but did not seek further medical treatment at that time. On 3 September 1991, plaintiff allegedly injured his left elbow when he reached to pull his machine and felt something hot run up his arm. The next day, plaintiff was seen by Dr. Futrell, who referred plaintiff to Dr. Sypher for further treatment.

The parties entered into a Form 21 agreement to pay plaintiff temporary total disability benefits for a "strain to [left] wrist" arising out of the April 1991 injury by accident. Plaintiff received these benefits from 12 September 1991 until 18 May 1992, at which time Dr. Sypher released plaintiff to return to work. The day before his scheduled return to work, plaintiff broke his right little finger in an accident at home. He was given four weeks' leave of absence for the injury to his finger. At the end of that period, plaintiff did not report to work, and he was terminated on 26 June 1992. On 16 July 1992, Dr. Sypher determined that plaintiff's left wrist had reached maximum medical improvement and released him with a ten percent permanent partial disability of the left hand.

On 9 November 1992, plaintiff filed a new claim seeking compensation for an injury to his left elbow arising out of the incident on 3 September 1991. Defendants did not accept this claim. At the hearing, plaintiff contended that he injured his elbow in the April 1991 accident. Defendants disputed this contention and argued that the alleged incident in September 1991 either did not occur at all or did not occur in the manner alleged by plaintiff.

After further discovery, the deputy commissioner filed an Opinion and Award containing the following findings of fact:

1. On April 30, 1991, plaintiff injured his left wrist. . . . This injury admittedly resulted from an accident arising out of and in the course of his employment. . . . Plaintiff has now reached maximum medical improvement from this injury and has been released with a ten percent permanent partial disability rating of the left hand.

2. On or about September 3, 1991, plaintiff injured his left arm . . . while pulling on a lever on a machine at work . . . .

3. In a statement to the carrier taken on September 17, 1991, plaintiff stated that he was doing his normal job when the second injury occurred. When asked if there was something different or unusual, he said, "The same way I always do. I just reached and got it and pulled it to me and when I did it just felt like somebody shot a poker up through my arm pit." When asked again about nothing being different or unusual, he said, "Same old thing."

4. In a second statement to the carrier taken on December 14, 1992, he appears to attribute the elbow injury to an additional weight that was on the back of the machine he was operating. This statement is not credible. Johnny Webb, who was plaintiff's supervisor, and Tony Hoglen, who was on the safety committee, both checked the machine after the alleged accident and found no explanation for it sticking as plaintiff alleged. Even the plaintiff acknowledged in his hearing testimony that he could not say that there was additional weight on the machine causing it to stick and had no explanation for why it would stick. . . .

5. Although plaintiff told Johnny Webb immediately after the alleged accident that the machine stuck, such statement is not credible considering the inconsistent statements given the carrier and the lack of any explanation for the machine to stop.

6. Plaintiff also testified that he hurt his elbow on April 30, 1991 when his wrench slipped; however, he received no medical treatment until after his injury on September 3, 1991, and there is no credible evidence, medical or otherwise, that the elbow injury resulted from the first incident . . . .

The deputy commissioner concluded that "the elbow injury was not the result of an accident arising out of and in the course of [plaintiff's] employment" and that plaintiff was not entitled to compensation and medical treatment for the elbow injury.

[1] Plaintiff appealed to the Full Commission and moved to introduce additional evidence relating to medical treatment he had received since the deputy commissioner's decision. The Full Commission found no good ground to reconsider the evidence, receive further evidence, or amend the Opinion and Award, and affirmed and adopted the deputy commissioner's findings and conclusions.

AGEE v. THOMASVILLE FURNITURE PRODUCTS

[119 N.C. App. 77 (1995)]

Plaintiff argues that the Full Commission erred by failing to review the deputy commissioner's Opinion and Award *de novo* as required by N.C. Gen. Stat. § 97-85 and by failing to allow plaintiff's motion for additional evidence. N.C. Gen. Stat. § 97-85 (1991) provides that upon a timely appeal of an award of a deputy commissioner, "the full Commission shall review the award, and, *if good ground be shown therefor*, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, *if proper*, amend the award" (emphasis added). Whether "good ground be shown therefor" in any particular case is a matter within the sound discretion of the Commission, and its decision in that regard will not be reviewed on appeal absent a showing of abuse of discretion. *Thompson v. Burlington Industries*, 59 N.C. App. 539, 543, 297 S.E.2d 122, 125 (1982), *cert. denied*, 307 N.C. 582, 299 S.E.2d 650 (1983). Plaintiff has not shown any abuse of discretion in this case, nor has he pointed to any facts indicating that the Full Commission failed to make a thorough review of the deputy commissioner's Opinion and Award. Accordingly, these assignments of error are overruled.

[2] Plaintiff next argues that the Commission erred by failing to make appropriate findings of fact and conclusions of law. Specifically, plaintiff claims that (1) the Commission should have included a finding that plaintiff was entitled to temporary total disability benefits after 18 May 1992 since no evidence existed to show that defendant employer had a suitable job available for plaintiff; (2) the evidence did not support the Commission's finding that plaintiff's wrist had reached maximum medical improvement; and (3) the Commission should have found that plaintiff sustained a wage loss due to the wrist injury.

It is well settled that appellate review of an award of the Industrial Commission is limited to consideration of whether the Commission's findings of fact are supported by competent evidence and whether its findings of fact justify its conclusions of law. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982); *Gilbert v. Entenmanns, Inc.*, 113 N.C. App. 619, 623, 440 S.E.2d 115, 118 (1994). After a careful review of the evidence, we find there was competent evidence to support the Commission's findings and these findings support its conclusions and award.

The evidence showed that Dr. Sypher released plaintiff to return to work on 18 May 1992. His office notes indicate that plaintiff's wrist

was doing very well and that any limitations were due to the elbow injury. No further treatment was offered for plaintiff's wrist after 18 May 1992. On the eve of plaintiff's return to work, he sustained a non-compensable injury to his right hand and was given four weeks' leave, which was to end on 22 June 1992. When this leave expired, plaintiff did not report to work and was terminated by defendant employer. Plaintiff continued to see Dr. Sypher, who indicated in his office notes from 16 July 1992 that plaintiff's wrist had reached maximum medical improvement. Dr. Sypher released plaintiff from his care on that date.

This evidence supports the Commission's finding that plaintiff's wrist had reached maximum medical improvement. It also supports the inferences that defendant employer had suitable work available for plaintiff on 18 May 1992, the date Dr. Sypher released him to light duty work, and that plaintiff's wage loss after that date was not due to his compensable wrist injury. Thus, the Commission was correct in not awarding plaintiff temporary total disability benefits after that date.

[3] Plaintiff next argues that the Commission erred by concluding that "the elbow injury was not the result of an accident arising out of and in the course of [plaintiff's] employment" and that plaintiff was not entitled to compensation and medical treatment for the elbow injury. Plaintiff argues that "[he] sustained a compensable left wrist and left arm injury on April 30, 1991, which was exacerbated by the September 3, 1991 accident which arose out of and in the course of his employment, when the cutter bar suddenly stopped, jerking plaintiff's left arm and left wrist." Alternatively, he argues that he injured his elbow on 3 September 1991 and that this injury was compensable because it resulted from an accident arising out of and in the course of his employment.

The Commission found that plaintiff's testimony regarding the cause of his alleged elbow injury was not credible. The Commission is the sole judge of the weight and credibility of testimony, and its findings of fact may be set aside on appeal only when there is a complete lack of evidence to support them. *Mayo v. City of Washington*, 51 N.C. App. 402, 406, 276 S.E.2d 747, 750 (1981).

We find there was competent evidence to support the Commission's finding that plaintiff did not injure his elbow in the April 1991 accident. Plaintiff did not seek medical treatment for any injury until after the alleged September 1991 incident. Following the April accident, plaintiff saw the company nurse, who gave him a wrist

splint. The Form 21 signed by plaintiff was for a strain to plaintiff's left wrist. There is no reference in any medical notes to an elbow injury except in connection with the alleged incident in September 1991, and there is no testimony from any medical provider that, to a reasonable degree of certainty, the April 1991 accident could or might have caused the elbow injury. The Commission found plaintiff's assertions to the contrary were not credible, and this finding will not be disturbed on appeal.

There was also competent evidence to support the finding that plaintiff's testimony regarding the cause of the alleged September 1991 injury was not credible. Plaintiff testified at the hearing that he injured his elbow when the machine stuck but that he had no explanation why the machine stuck. However, prior to the hearing plaintiff had made inconsistent statements in this regard to defendant carrier. In his first interview, plaintiff was asked whether, at the time he pulled the machine to him and felt the pull in his arm, there was "something different or unusual about the way that happened. . . ." Plaintiff replied, "The same way I always do. I just reached and got it and pulled it to me and when I did it just felt like somebody shot a poker up through my arm pit." Plaintiff made no mention of the machine sticking during this interview. In his second interview, plaintiff for the first time blamed his injury on the machine sticking due to added weights on the back of it. Plaintiff's supervisor testified that he examined the machine after plaintiff reported his elbow injury and could find no explanation for the machine sticking. This evidence would support a finding that plaintiff's testimony was not credible. Furthermore, the Commission's finding that the machine did not stick on 3 September 1991 amounts to a finding that plaintiff did not meet his burden of proving that his elbow injury resulted from an accident arising out of and in the course of plaintiff's employment and fully justifies the Commission's conclusion that plaintiff was not entitled to compensation for the elbow injury. See N.C. Gen. Stat. § 97-2(6) (Cum. Supp. 1994) ("injury" means "only injury by accident arising out of and in the course of the employment . . ."); Swindell v. Davis Boat Works, 78 N.C. App. 393, 397, 337 S.E.2d 592, 594 (1985) (no matter how great the injury, if it occurred under normal working conditions and the employee was injured while performing his regular duties in the usual and customary manner, no accident has occurred), cert. denied and appeal dismissed, 316 N.C. 385, 342 S.E.2d 908 (1986).

We have examined plaintiff's other assignments of error and find them to be without merit.

The Opinion and Award of the Full Commission is

Affirmed.

Judge EAGLES dissents.

Judge MARTIN, JOHN C. concurs.

Judge EAGLES dissenting:

I respectfully dissent from the majority's conclusion that plaintiff's injury did not result from an accident arising out and in the course of plaintiff's employment. Plaintiff contends that on 3 September 1991, he injured his left elbow while operating a master carver machine. The majority concludes that there is competent evidence in the record to support the Industrial Commission's finding (hereinafter Commission) that plaintiff's testimony regarding the cause of that accident was not credible and on that basis that compensation should not be awarded. I disagree.

Plaintiff testified:

I was moving the machine back to change the stock in the machine. Then when I reached to pull the machine back to me, I pulled down on it. When I pulled it to me, the machine stopped. When it did, I felt like something just tore loose in my elbow, and it felt like something hot just ran up my arm, and I couldn't do anything else with it. That was all I done.

The Commission found that plaintiff's testimony was not credible, because plaintiff gave inconsistent statements to defendant's insurance carrier regarding the cause of the accident and the evidence revealed no explanation for the machine to stop.

A careful reading of the record and transcript reveals that plaintiff's statements to defendant's insurance carrier were not inconsistent. Plaintiff was interviewed by Gary Gibson of defendant Liberty Mutual Insurance Company to determine how plaintiff injured his elbow. Plaintiff testified on cross-examination that he told Gibson he injured his elbow on 3 September 1991 when he "loaded the machine back up and reached back over to get the machine like that, to pull the machine, and had to pull it down because of weight and pull it to you, that when you pulled it, you pulled this muscle in your elbow." Plaintiff also testified that when Gibson asked him whether he was

doing anything different or unusual at the time of the accident, plaintiff responded that he was doing "the same [sic] way I always do. I just reached and got it and pulled it to me; and, when I did, it just felt like somebody shot a poker up through my armpit." Plaintiff also gave a second statement to Gibson over the telephone concerning a statement that plaintiff made indicating that the weights on the back of the machine were different. Plaintiff testified on cross-examination that a large round weight that is usually on the front of the machine was missing. Plaintiff testified that he could operate the machine without the weight, but using the weight made it easier to use the machine. These statements are in no way inconsistent. In the first statement to Gibson, plaintiff described what he was doing when he injured his elbow; running the master carver machine "the same as I always do." In his second statement to Gibson, plaintiff described something unusual about the master carver machine, that one of the weights on the machine was missing.

The Commission also found that plaintiff's testimony was not credible because there was no explanation of what caused the machine to stop. While there may be no explanation of what caused the machine to stop, there is no evidence in the record to contradict plaintiff's testimony that the machine stopped while plaintiff was operating the machine. Defendant's evidence consists of testimony that defendant's employees could not cause the machine to stop in the manner that plaintiff described. The facts here are analogous to "unexplained-fall cases." In those cases, even though the reason for the fall which caused injury was unknown, our courts have found that the fall was an accident "arising out of" the employment. *See Slizewski v. International Seafood Inc.*, 46 N.C. App. 228, 264 S.E.2d 810 (1980); *see also Calhoun v. Kimbrell's Inc.*, 6 N.C. App. 386, 170 S.E.2d 177 (1969). Here, as in *Slizewski*, there is no finding that any force or condition independent of the employment caused the machine to stop. Plaintiff, in operating the master carver machine, was engaged in the duties of his employment and the only active force involved in the accident was plaintiff's exertions and the machine's malfunction. In these situations, our courts have liberally interpreted the Workers' Compensation Act to allow the inference that the accident arises out of plaintiff's employment. *Slizewski*, 46 N.C. App. at 233, 264 S.E.2d at 813.

The majority cites *Swindell v. Davis Boat Works*, 78 N.C. App. 393, 337 S.E.2d 592 (1985) for the proposition that plaintiff's injury was not the result of an "accident" arising out of and in the course of

plaintiff's employment. In *Swindell*, this Court stated, "No matter how great the injury, if it is caused by an event that involves both an employee's normal work routine and normal working conditions it will not be considered to have been caused by an accident." *Id.* at 397, 337 S.E.2d at 594. *Swindell*, however, is distinguishable on its facts.

Unlike the instant case, in *Swindell*, plaintiff injured his knee while attempting to side-step behind another employee in a small and cramped break area to reach a vending machine. Plaintiff's job involved working in confined areas in cramped conditions over seventy-five percent of the time. Plaintiff testified that he went to the break area every day and that there was nothing unusual about the number of employees present in the area and that he had side-stepped other employees in the same manner on other occasions. On appeal, this Court affirmed the Commission's conclusion that plaintiff did not sustain an injury by "accident" as defined under the Act. Our holding was based on plaintiff's testimony that there were no unusual circumstances at the time of plaintiff's injury. "There must be some new circumstance not a part of the usual work routine in order to find that an accident occurred." *Swindell*, 78 N.C. App. at 396, 337 S.E.2d at 594.

Here, plaintiff testified that when he reached to pull the machine back towards him, the machine stopped rolling forward and he felt "like something just tore loose in my elbow, and it felt like something hot just ran up my arm." The unusual circumstance was the machine not moving properly. There is no evidence that the machine did not stop moving. Plaintiff is not required to prove why the machine stopped moving to recover Workers' Compensation benefits. There is also no medical evidence that plaintiff's elbow injury could not have resulted from the machine stopping unexpectedly.

The majority also concludes that the there is sufficient evidence to support the Commission's finding that the 30 April 1991 injury to plaintiff's wrist had reached maximum medical improvement on 18 May 1992. I disagree. The term "maximum medical improvement" is not defined in the statutes and has been the source of some confusion. G.S. 97-31 provides compensation for temporary disability during the "healing period." The healing period ends when "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976). The point at which the injury has stabilized is often called "maximum medical

improvement." *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 330 (1985). In *Carpenter*, this Court discussed the term "maximum medical improvement" and its relation to the termination of the "healing period" required by G.S. 97-31.

> [Maximum medical improvement] connotes that a claimant is only temporarily totally disabled and his body healing when his condition is steadily improving, and/or he is receiving medical treatment. Yet, recovery from injuries often entails a healing period of alternating improvement and deterioration. In these cases, the healing period is over when the impaired bodily condition is stabilized, or determined to be permanent, and not at one of the temporary high points. Moreover, in many cases the body is able to heal itself, and during convalescence doctors refrain from active treatment with surgery or drugs. Thus, the absence of such medical treatment does not mean that the injury has completely improved or that the impaired bodily condition has stabilized.

*Id.* at 311, 326 S.E.2d at 330 (1985). Here, plaintiff's physician, Dr. Robert Sypher, released plaintiff to return to light duty work on 18 May 1992. However, he did not state that plaintiff had reached maximum medical improvement until 16 July 1992. Dr. Sypher's notes dated 16 July 1992, indicate that plaintiff had reached maximum medical improvement as of the date of that examination.

In sum, plaintiff's injury to his left elbow resulted from an accident arising in the course of and in the scope of plaintiff's employment. Furthermore, plaintiff should receive temporary disability benefits for the 30 April 1991 injury to his left wrist until plaintiff reached maximum medical improvement on 16 July 1992. Accordingly, I would reverse the Opinion and Award of the Commission and remand for proceedings to determine the amount of compensation to which plaintiff is entitled for any permanent partial disability of plaintiff's elbow.