GREGORY CHARLES SLIZEWSKI, EMPLOYEE, PLAINTIFF v. INTERNATIONAL SEAFOOD, INC., EMPLOYER AND THE TRAVELERS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7910IC822

(Filed 15 April 1980)

1. **Master and Servant § 55.3— workers' compensation — cause of fall unknown — injury by accident arising out of employment**

The evidence, or lack thereof, supported a finding that the cause of plaintiff's fall to the floor of the restaurant of which he was assistant manager was unknown, and the Industrial Commission could properly find that plaintiff was injured by accident arising out of and in the course of his employment where there was no finding that any force or condition independent of the employment caused the fall, and the evidence showed that plaintiff was engaged in the duties of his employment at the time of the fall and that the only active force involved was plaintiff's exertions in the performance of his duties.

2. **Master and Servant § 69.1— workers' compensation — hematoma suffered in fall — cause of hemiplegia and visual difficulties**

The evidence was sufficient to support the Industrial Commission's finding that a hematoma suffered by plaintiff employee in a fall caused brain damage rendering plaintiff a partial hemiplegic and reducing his visual capabilities where it tended to show that, prior to the fall, plaintiff was a healthy young man with no history of seizures, paralysis or visual disability; the day after the fall plaintiff was completely unconscious, had some movement on his right side but had no movement of his left arm and leg and had a complete left hemiplegia; a surgeon performed a craniectomy removing a hematoma from the right side of plaintiff's brain; the next thing plaintiff remembered after the fall was waking up in the hospital and being paralyzed on his left side and being unable to speak or see very well; and at the time of the hearing plaintiff had seizures under too much stress or excitement, was still paralyzed in his left hand, partially paralyzed in his left leg and face and wore glasses.

3. **Master and Servant § 69.1— workers' compensation — permanent disability**

The Industrial Commission could properly find that plaintiff suffered permanent brain damage and is permanently disabled by reason of that injury when the severe nature of plaintiff's injury is considered with a surgeon's testimony that it would be impossible to recover completely from a hematoma of the size which he removed from plaintiff's brain but that how much recovery is possible is very difficult to estimate.

Slizewski v. Seafood, Inc.

APPEAL by defendants from Order of the North Carolina Industrial Commission entered 10 May 1979. Heard in the Court of Appeals 7 March 1980.

The parties stipulated that they are bound by and subject to the provisions of the North Carolina Workmen's Compensation Act; that defendant employer employed four or more employees on 25 January 1976; that an employer-employee relationship existed on 25 January 1976; that the carrier assuming the workmen's compensation risk for defendant employer on 25 January 1976 was Travelers Insurance Company and that claimant's average weekly wage was $237.77.

After hearings before Deputy Commissioner Ben E. Roney, Jr., on 7 April and 30 September 1977 and before Deputy Commissioner John Charles Rush on 15 February 1978, Deputy Commissioner Roney found the following pertinent facts:

1. Claimant fell at work on 25 January 1976. During the fall he suffered a linear fracture in the right posterior parietal region of the skull. The right hemisphere of his brain commenced to hemorrhage and a huge hematoma was evacuated by Dr. Timmons following hospitalization at Pitt County Memorial Hospital on 26 January 1976. He was admitted to the hospital on this occasion completely comatose. The massive hematoma caused permanent brain damage that has rendered claimant a left-sided partial hemiplegic. The pressure inside the skull occasioned by the massive hematoma caused permanent damage to claimant's eyes that has significantly caused a reduction in his visual capabilities.

2. Claimant attempted to return to work for defendant employer during April 1976. He worked for three days but was unable to handle the physical requirements of the job.

3. Claimant is totally and permanently disabled by reason of the injury that he suffered during the 25 January 1976 fall giving rise hereto.

4. The fall occurred in the service area between the kitchen and dining room. He fell forward with his arms across his chest, rotating counter-clockwise and landed on the right shoulder and right portion of his head. He commenced to fit following the fall.

5. Claimant was not an epileptic on the day of or any time prior to the fall giving rise hereto.

6. Claimant received surgery during October 1975 for carcinoma of the left leg. He received three intravenous chemotherapy treatments following surgery. The chemotherapy treatments were discontinued because they caused vomiting.

7. Claimant went to work as manager of defendant employer three days prior to 25 January 1976. He has experienced several seizures subsequent to the fall that usually occur during stress or exertion. He is currently taking Dilantin and Phenobarbital as measures designed to control seizure activity.

8. Claimant's memory with respect to the events following the fall is not particularly good. His memory for the cause of the fall presumes a slip. He had, however, been observed just prior to the fall leaning with his left shoulder against the wall between the kitchen and dining area looking out into the dining area. He was next observed falling forward in the manner previously described. The manner in which claimant fell does not confirm the occurrence of a slip and fall.

9. The cause of the fall giving rise hereto is unknown. The evidence of record does not compel directly or by inference a conclusion that the fall was occasioned by an idiopathic condition inasmuch as claimant was not suffering from any known idiopathic condition on or prior to 25 January 1976.

10. Claimant was injured by accident arising out of and in the course of the employment.

11. The compensation rate herein for lifetime benefits is $146.00.

Based on the foregoing findings of fact, Deputy Commissioner Roney made the following conclusions of law:

1. Without regard to any inferences favoring either party, the evidence of record herein reveals an accident (fall) without a known cause that occurred in the course of the

Slizewski v. Seafood, Inc.

employment. The law under these circumstances presumes the "arising out of" requirements. (Citations omitted.)

2. Claimant was injured by accident arising out of and in the course of the employment. NC GS 97-2(6).

3. Claimant is by reason of the injury by accident giving rise hereto a lifetime case and is entitled to compensation at $146.00 per week beginning 25 January 1976. NC GS 97-29.

On appeal to the Full Commission, the Full Commission adopted as its own the Opinion and Award of Deputy Commissioner Roney. Defendants appealed.

*Franklin B. Johnston for plaintiff appellee.*

*G. Collinson Smith for defendant appellants.*

MARTIN (Robert M.), Judge.

[1] Defendants assign as error that there was no competent evidence in the record to support Finding of Fact No. 9, that the cause of the fall was unknown, and Finding of Fact No. 10, that claimant was injured by an accident arising out of and in the course of his employment, and the conclusions of law based thereon. Defendants further argue that Finding of Fact No. 4 does not support the findings of fact or conclusions of law.

The evidence in the case *sub judice* tends to show that plaintiff, the assistant manager at the Family Fish House Restaurant had completed his rounds on 25 January 1976, which included an inspection of the kitchen area where foods were being deep-fat fried. Plaintiff ended up where the witnesses usually fill glasses with drinks outside the kitchen doors. Plaintiff testified that when he walked out to the waitress area, he remembered leaning and falling and not being able to grab onto anything and after that he remembered nothing. David Louthen, a waiter at the Fish House, stated that he walked past the plaintiff who was leaning against a wall in the service area. Louthen then sat down at a table located about four feet from the service area where he was talking to a waitress and could not observe plaintiff for several minutes. The next time Louthen saw plaintiff, he observed the top portion of plaintiff's body falling in front of him with his hands clasped across his chest, plaintiff fell as a tree falls, direct-

ly forward and landed directly on his head. As soon as plaintiff fell he went into convulsions. Louthen also testified that plaintiff might have moved from his original position prior to the fall. Plaintiff's wife testified that when she received plaintiff's personal belongings at the hospital that his shoes were covered with "greasy stuff."

In regard to his physical condition prior to the accident, plaintiff testified that in 1975 he had a carcinoma of the left leg which was removed and following the surgical excision of the carcinoma he received chemotherapy but he had recovered completely from that and was not experiencing any medical problems in reference to that treatment. Several witnesses testified that prior to the accident, plaintiff was a healthy, active, sports minded young man. Dr. Timmons, who treated plaintiff for the hematoma from 26 January 1976 to 11 February 1977, stated that he did not observe any pre-existing medical difficulty which might cause a hematoma other than the fall.

Defendants do not except to the Commissioner's finding of fact that plaintiff's memory for the cause of the fall presumes a slip but that the manner in which claimant fell does not confirm the occurrence of a slip and fall. The evidence does not compel a finding that the cause of the fall was a slip nor does it reveal any other possible cause of the fall. There is no evidence that plaintiff was suffering from an idiopathic condition which caused either the fall or the hematoma. The evidence, or lack thereof, on the cause of the fall is sufficient to sustain the finding that the cause of the fall was unknown.

Having determined that the cause of the fall was unknown, the courts have found that the fall was an accident "arising out of" the employment and sustained an award in *Calhoun v. Kimbrell's Inc.*, 6 N.C. App. 386, 170 S.E. 2d 177 (1969) and the authorities cited therein. Quoting from *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865 (1963), the court in *Calhoun* stated:

> It has been suggested that this result in unexplained-fall cases relieves claimants of the burden of proving causation. We do not agree. The facts found by the Commission in the instant case permit the inference that the fall had its origin in the employment. There is no finding that any force or condition independent of the employment caused or contributed

to the accident. The facts found indicate that, at the time of the accident, the employee was within his orbit of duty on the business premises of the employer, he was engaged in the duties of his employment or some activity incident thereto, he was exposed to the risks inherent in his work environment and related to his employment, and the only active force involved was the employee's exertions in the performance of his duties.

*Id.* at 390, 170 S.E. 2d at 179-80. In the present case, as in *Taylor* and *Calhoun*, there is no finding that any force or condition independent of the employment caused the fall. The plaintiff, in completing his inspection of the area, was engaged in the duties of his employment and the only active force involved was plaintiff's exertions in the performance of his duties. In such a situation, our decisions, liberally interpreting the Workmen's Compensation Act, indulge the inference that the accident arises out of his employment, and when the Commission so finds, that finding is conclusive on appeal.

The Commission's conclusion that "[t]he law under these circumstances presumes the 'arising out of' requirement" is correct to the extent that a presumption, a term often loosely used, encompasses the concept of an inference. *See Henderson County v. Osteen*, 297 N.C. 113, 254 S.E. 2d 160 (1979).

[2] Defendants further assign as error that Findings of Fact Nos. 1 and 3 are not supported by competent medical testimony in the record. Defendants contend that there is no evidence in the record that the hematoma caused permanent brain damage that has rendered plaintiff a partial hemiplegic as well as caused permanent damage to plaintiff's eyes and that claimant is totally and permanently disabled by reason of the injury. Defendants, by these assignments of error, apparently do not contend that the fall did not cause the hematoma. The causal relationship between the accident and the injury, the hematoma, is sufficiently established by expert medical testimony. Dr. Timmons testified that in his opinion there was a causal relationship between the fall and the hematoma which he removed from the right side of plaintiff's brain and that he did not observe any other pre-existing medical difficulty which might cause said hematoma. In addition, Dr. Michael Weaver, a diagnostic radiologist, testified

that plaintiff suffered a well defined linear non-depressive skull fracture and that he was of the opinion that the fall could have produced such a fracture and the resulting hematoma. Hence, the above assignments of error are limited to the causal relationship between the accident and the specific consequences of that injury, the partial hemiplegia and visual disability, and the permanency of those injuries.

In *Click v. Freight Carriers*, 41 N.C. App. 458, 255 S.E. 2d 192 (1979) we discussed the appropriate circumstances under which an award may be made when medical evidence on the causal relationship between the injury and the accident is unconclusive, indecisive, fragmentary or even non-existent. Larson's Workmen's Compensation Law, § 79.51, 15-246 to 247 (1976). In *Click* we quoted with approval from *Uris v. State Compensation Department*, 247 Or. 420, 427 P. 2d 753 (1967).

> In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his supervisor and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury. . . . (Citation omitted.)

*Id* at 462, 255 S.E. 2d at 195.

We think that the distinguishing features are present in the case at bar. Prior to the fall, plaintiff was a healthy young man with no history of seizures, paralysis or visual disability. As soon as plaintiff fell landing directly on his head, he went into convulsions which continued after he was admitted to the hospital. On 26 January 1976, the day after the fall, Dr. Timmons testified that plaintiff was completely unconscious, had some movement on his right side but had no movement of his left arm and leg and had a complete left hemiplegia. Dr. Timmons performed a craniectomy removing a hematoma from the right side of plaintiff's brain. The next thing plaintiff remembered after the fall was waking up in the hospital and being paralyzed on his left side and being unable to speak or see very well. At the time of the hearing, plaintiff had

seizures under too much stress or excitement, was still paralyzed in his left hand, partially paralyzed in his left leg and face and wore glasses. Under these circumstances, the fact that the accident caused the injuries can reasonably be inferred. We find, therefore, that the evidence was sufficient to support the Commission's finding of fact that the hematoma caused brain damage rendering plaintiff a partial hemiplegic and reducing his visual capabilities.

[3] The remaining question is whether plaintiff has presented sufficient evidence that he has suffered permanent brain damage and is permanently disabled by reason of that injury. In *Gamble v. Borden, Inc.*, 45 N.C. App. 506, 263 S.E. 2d 280 (1980) a permanent total case was defined as one in which an employee sustains an injury which results in his inability to function in any work related capacity at any time in the future. Dr. Timmons testified that it would be impossible to recover completely from a hematoma of the size which he removed from plaintiff's brain but that how much recovery was possible was very difficult to estimate. While this medical testimony leaves open the possibility of some improvement in plaintiff's condition, given the severe nature of plaintiff's injury and the impossibility of complete recovery, there is sufficient evidence from which the Commission could find that plaintiff suffered permanent brain injury and is permanently unable to function in a work related capacity.

Affirmed.

Judges CLARK and ERWIN concur.