Upon review of all of the competent evidence of record with regard to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the deputy commissioner.
The Full Commission finds as fact and conclude as a matter of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
STIPULATIONS
On the alleged date of injury, an employer-employee relationship existed between the plaintiff and defendant-employer.
On the alleged date of injury, the parties were subject to the North Carolina Workers' Compensation Act.
North Carolina Farm Bureau Mutual Insurance Company was the carrier on the risk on that date.
The date of the alleged injury is September 23, 1993.
A determination of plaintiff's average weekly wage, if necessary, may be made based upon the wages of two similar employees, due to the limited period of time plaintiff was employed with defendant-employer.
Exhibits consisting of medical records, a recorded statement, and answers to interrogatories are stipulated into evidence.
***************
Based upon the competent evidence adduced at the hearing, the Full Commission make the following
FINDINGS OF FACT
Plaintiff began employment with defendant Morton Brick Block on or about September 16, 1993 earning $6.00 per hour. He worked only five work days until September 23, 1993, the date of his alleged accident. Plaintiff claims to have worked for Morton Brick Block as a subcontractor for about two weeks in February of 1993.
Plaintiff's prior work history is voluminous, yet sporadic. Plaintiff claims to have worked at various block jobs in 1985, 1987, and 1988 in Florida, New Jersey and apparently Pennsylvania. Plaintiff provides no work history from the late Fall of 1988 until August of 1993. Plaintiff claims to have worked one day in August of 1993 for a roofing company and for approximately two weeks at Onslow Brick Block in Richlands, North Carolina in August or September, 1993.
Prior to his alleged injury on September 23, 1993, plaintiff was in no less than four on-the-job accidents resulting in complaints of back pain. Based upon the medical records, Plaintiff's Responses to Interrogatories, and plaintiff's testimony, it appears that plaintiff had such work-related accidents on or during October 23, 1985 in Tampa, Florida; June 1987 in New Jersey; October 14, 1988 in Pennsylvania; and an additional accident in 1988 in New Jersey. Significantly, all of these accidents resulted in allegations of back pain; at least three of the accidents occurred while the plaintiff was engaged in work involving cement block, and at least three of the accidents were the result of a fall from, or other accidents involving scaffolding.
Plaintiff was also injured when allegedly hit by an automobile in April 1993.
The medical records from these alleged injuries show a total of approximately 95 visits to health care providers whereby plaintiff sought treatment and/or diagnosis. During a significant number of these visits, plaintiff also sought narcotic medication. Plaintiff furthermore has not always exhibited cooperation with his medical providers and has even shown signs of intentionally attempting to manipulate the results of medical examinations. Medical treatment for plaintiff's present and past alleged injuries (as documented by the medical records in this matter) was given by at least eighteen health care providers. In addition, there is an apparent gap in medical records from plaintiff's alleged injury in New Jersey.
While in the Army, furthermore, plaintiff experienced an injury of some sort but declined to provide details in regard to this case.
On one occasion in 1986, a North Carolina physician treating plaintiff for a prior injury noted that there were no objective findings to support plaintiff's complaints of pain and that the plaintiff had filled out a worksheet in such a manner as to indicate that he was malingering or was a hypochondriac. On another occasion in 1990, an orthopaedic physician indicated that there was a strong indication that plaintiff was intentionally attempting to manipulate the results of a functional assessment examination and that there were multiple inconsistencies upon examination.
On September 23, 1993 plaintiff was again allegedly injured on scaffolding. The medical notes on the day of the injury indicate that plaintiff stepped down on a board that was not secure. He fell and bounced off the side of a cable. The precise manner in which plaintiff alleges the injury occurred is somewhat vague. It appears that plaintiff is alleging that he stepped on a board on a scaffold which was not secured and fell. Some evidence indicated that the plaintiff fell as far as six feet and bounced of a cable causing injury to his left arm, back and thigh. Other records indicate that plaintiff noticed debris on the ground including broken glass and that he broke his fall by grabbing the scaffolding which slung him into the side braces thereby causing his injuries.
Following his alleged injury, plaintiff returned to work for a different employer on March 5, 1994. Plaintiff had been employed by the defendant company for only five days and was earning $6.00 per hour, working approximately eight-hour days.
Plaintiff was treated by Dr. James R. Jackson who noted that plaintiff was reluctant to comply with his physical examination on October 21, 1993. Again, the plaintiff asked for pain medications which were refused. An MRI was performed on November 11, 1993 which was normal, and there were no other findings from which it could be objectively determined that plaintiff's complaints of pain were valid.
Beginning in January of 1994, plaintiff sought the assistance of a chiropractor, Dr. Schilsky. Dr. Schilsky testified that he did not expect his findings to be permanent, and he believed it was possible that his findings concerning plaintiff's physical condition were present prior to the alleged injury of September 23, 1993. Plaintiff sought treatment from no doctor other than Dr. Schilsky after November of 1993.
Plaintiff's work history, in combination with his injury history, suggest that his current allegations are not credible. Plaintiff was largely unemployed from 1988 until mid 1993. He worked for a roofing company for one day and thereafter for another brick and block company for approximately two weeks. He worked for the defendant Morton's Brick and Block for only five days prior to his alleged fall and injury.
The truthfulness of Mr. Copeland's allegations in this case is also called into question by his lack of cooperation with the rehabilitation nurse and Dr. Jackson. Ms. Sandy Smith of Crawford and Company testified at the hearing that plaintiff posed numerous barriers to being interviewed by her. Mr. Copeland was generally uncooperative. One primary example was refusing to provide a list of his prior injuries. Plaintiff was also resistant toward Dr. Jackson. Ms. Smith was compelled to conduct a medical interview in plaintiff's van at his insistence. During the second medical interview attempted by Ms. Smith, Mr. Copeland would not talk to her. Ms. Smith was forced to close her assistance due to plaintiff's lack of cooperation. Mr. Copeland's behavior was quite confrontational.
Following the alleged injury, plaintiff's functional capacity appears to have been greater than he was willing to admit at the hearing or to his medical and rehabilitation providers.
The evidence taken as a whole, including the medical records of plaintiff's injury history and his demeanor at hearing, shows a pattern of behavior indicating that plaintiff's current complaints of back pain are not legitimate or are not related to the September 23 incident. The medical evidence cited by plaintiff, as weak as it may be, depends upon the credibility of the plaintiff as to his subjective complaints of pain. The undersigned does not accept those complaints of pain as being credible.
Furthermore, the evidence shows that plaintiff most likely staged the September 23 incident in order to obtain narcotics as well as compensation. The medical records show that plaintiff has often demanded narcotic drugs upon his visits to medical care providers and that plaintiff has a drug abuse problem. Therefore, the undersigned finds that regardless of what actually occurred on September 23, 1993, plaintiff did not, by accident or otherwise sustain an injury arising out of and in the course of his employment resulting in a disabling condition.
Even if plaintiff made no intentional misrepresentation regarding the incident, his medical history would suggest that his complaints of pain are not legitimate, or were caused by prior injuries. In this regard, plaintiff has not met his burden of proving that his alleged injuries resulted from any incident on September 23, 1993.
************
Based upon the foregoing stipulations and findings of fact the Full Commission make the following
CONCLUSIONS OF LAW
On September 23, 1993, plaintiff did not, by accident or otherwise, sustain an injury arising out of and in the course of his employment resulting in a disabling condition. Plaintiff's testimony, which if believed, might tend to establish that he sustained a disabling compensable back injury on January 28, 1993, is not accepted as credible.
Concerning the credibility of a witness in a Workers' Compensation proceeding, Judge Hedrick, speaking for the Court of Appeals in Blalock v. Roberts Company, 12 N.C. App. 499,183 S.E.2d 827 (1971) stated:
 The Commission is the sole judge of the credibility of the witness and the weight to be given their testimony; it may accept or reject all of the testimony of a witness; it may accept a part and reject a part. Robbins v. Nicholson, 10 N.C. App. 421, 179 S.E.2d 183 (1971); Morgan v. Furniture, Inc., 2 N.C. App. 126, 162 S.E.2d 619 (1968), and Anderson v. Motor Company, 233 N.C. 372, 64 S.E.2d 265 (1951). The Commission has the duty and authority to resolve conflicts in the testimony of a witness or witnesses. If the findings made by the Commission are supported by competent evidence, they must be accepted as final truth. Rooks v. Cement Company, 9 N.C. App. 57, 170 S.E.2d 324 (1970); Petty v. Associated Transport, 4 N.C. App. 361, 167 S.E.2d (1968).
Plaintiff has not satisfied his burden of proving that his alleged injuries resulted from any incident on September 23, 1993. Click v. Pilot Freight Carriers, Inc., 41 N.C. App. 458,255 S.E.2d 192 (1979); Slizewski v. International Seafood, Inc.,46 N.C. App. 228, 264 S.E.2d 810 (1980).
************
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
Plaintiff's claim must under the law be and the same is hereby DENIED.
Each side shall bear its own costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ________________________ KIM L. CRAMER DEPUTY COMMISSIONER
BSB:be