The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications of Findings of Fact Number 4.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer/employee relationship existed between plaintiff and defendant/employer.
3. North Carolina Farm Bureau Mutual Insurance Company is the carrier on risk.
4. Plaintiff was a seasonal employee and his average weekly wage at the time of the alleged injury was $170.24.
5. Decedent's medical records were stipulated into evidence and marked Stipulated Exhibit One. These medical records consist of the following: twenty-two pages of documentation from Eastern Carolina Family Practice Center; six pages of documentation from Pitt Orthopedic Service, Inc.; three-hundred forty-three pages from Pitt County Memorial Hospital and one page which is Charlie Hardee's death certificate.
6. The issues before the undersigned are: (i) whether plaintiff sustained an injury by accident to his right knee on or about March 25, 1995; (ii) if so, what compensation, if any, is due plaintiff; and (iii) whether the subdural hematoma sustained by plaintiff was a result of the incident on March 25, 1995.
 EVIDENTIARY RULINGS
The objections raised in the depositions of Janice E. Daugherty, M.D., Mitchell M. Freedman, M.D., Bruce D. Wilhelmsen, M.D. and Joseph Leary are OVERRULED.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Charlie Hardee, the decedent, was employed as a seasonal employee for defendant/employer with the specific responsibilities as a sheet man. In that capacity, decedent distributed replacement sheets to the customers of the tobacco warehouse and returned for sheets of those customers left with their piles of tobacco.
2. Decedent had been employed with defendant/employer for approximately two tobacco seasons prior to the date of the alleged injury on September 29, 1993.
3. Decedent had retired from his previous employment in 1972 and had not worked until the beginning of his seasonal employment with defendant/employer in approximately 1991.
4. On September 29, 1993, decedent was struck by a golf cart driven by Joseph Leary in the area of his knees. A box attached to the back of this golf cart struck decedent just above his knees at about the level of his thighs just as Mr. Leary began operating the cart in reverse. Decedent fell backwards onto a sheet of tobacco and promptly sprang back up. Mr. Leary inquired of the decedent as to whether he was hurt and the decedent indicated he was not. Mr. Leary asked whether he wanted to go to a doctor and decedent indicated he did not. Mr. Leary saw the decedent the following morning and asked if he were okay and decedent indicated that he was all right.
5. Decedent continued to work for the remainder of the day of the alleged injury and continued to work for the remainder of the season except for the final four to five days when he was not needed and decided to go fishing.
6. Decedent's supervisors, Mr. Elks and Mr. Leary, were not aware of any complaints of pain or other problems relating to the incident on September 28, 1993 at any time after that date.
7. Decedent was not employed by defendant/employer for the following year because the business was reorganized and the sheet man position was eliminated.
8. Decedent cared for the needs of his wife in 1994 until the time of her death on or about August 1, 1994.
9. Following the event of September 28, 1993, decedent first sought medical attention on October 19, 1993 when he went to the Emergency Room of the Pitt Memorial Hospital. Decedent gave a history of being struck by a golf cart four weeks prior to his presenting himself to the hospital.
10. Decedent was seen by Janice Daughtery, M.D., a family practitioner. Dr. Daugherty obtained a history of plaintiff being that he was struck by a golf cart three or four weeks before while at work and noted a mild swelling of the entire right leg and tenderness over the distal quadriceps and diagnosed soft tissue injury of the right knee. X-rays revealed calcific density adjacent to the medial aspect of the proxal tibia likely related to a previous injury of the medical calateral ligament.
11. Dr. Daughtery referred decedent to Bruce Wilhelmsen, an orthopedist, on November 23, 1993.
12. Dr. Wilhelmsen first saw decedent on December 7, 1993 and noted a history of patient being struck by a golf cart at work and primary symptoms of right knee discomfort, but also noting no locking, popping or giving way. Dr. Wilhelmsen's diagnosis was preexisting osteoarthritis, right knee with slight progression since 1985, radiographically and a history of recent contusion with symptoms now relieved with unknown medication.
13. Dr. Wilhelmsen indicated that he saw no evidence of long term impairment at the time and released decedent from his care to return as needed.
14. Decedent did not return to Dr. Wilhelmsen.
15. Decedent returned to see Dr. Daughtery on January 31, 1994 complaining of discomfort in his right shoulder similar to that which he had had a number of years previously. Dr. Daughtery's diagnosis as a result of this examination was recurrent tendinitis to the shoulder.
16. Decedent saw Dr. Daugherty on May 2, 1994 for complaining of shaking all over and was diagnosed with new onset of congestive heart failure and urinary tract infection.
17. Decedent continued to see Dr. Daughtery on a frequent basis through at least November 1, 1994 for various medical problems including a continuing of pain in the right knee.
18. On March 24, 1995, decedent was at home alone with no family member present when he developed neck pain and headache and requested his sister-in-law to call the rescue squad. Decedent was admitted to Pitt County Memorial Hospital where he denied having fallen although decedent's son testified that he was told by his father that he did fall and a small laceration was present on decedent's head upon being admitted to the Emergency Room. Decedent was diagnosed with a subdural hematoma and died from complications from the subdural hematoma on April 21, 1995
19. Decedent had been treated for right knee pain in October, 1994. Plaintiff was referred to Dr. Bowman at Pitt Orthopedics at the time and saw Dr. McGuillicuddy, an orthopedist, later that month. Decedent underwent arthroscopy of the right knee in November, 1984.
20. S. Mitchell Freedman, M.D. indicated that the knee injury was not the proximate or direct cause of decedent's final medical illness. There were a number of complicating medical problems that could have contributed to decedent losing his footing at the time and the medical records indicate preexisting medical problems that could render a person likely to fall or to have an unsteady gait.
21. Dr. Freedman indicated that the cause of the fall was more likely a temporary ischemic attack.
22. Dr. Freedman further indicated that he would relate the history decedent had given to Dr. Daughtery to a temporary ischemic attack as well because the description is consistent with a vascular phenomenon involving losing one's balance and having propulsive falling. There is no other medical evidence which would contradict Dr. Freedman's opinions relating to these issues.
23. There is insufficient evidence of record from which to determine by its greater weight that decedent suffered an injury during the event occurring on September 28, 1993.
24. There is insufficient evidence of record from which to determine by its greater weight that decedent was unable to earn wages as a result of the alleged injury of September 28, 1993.
25. Although Dr. Daughtery provided a permanent partial disability rating of thirty percent of the leg as a result of the alleged injury on September 28, 1993, Dr. Daughtery indicated that she does not consider herself to be an expert in rendering disability ratings, was not familiar with the ratings guidelines and considered her rating as just her best guess. Dr. Daughtery stated that she would defer to the opinion of an orthopedic physician on the issue of permanent partial disability because an orthopedist would be more experienced in rendering such ratings.
26. Dr. Wilhelmsen, an orthopedist, testified that when he last saw decedent he felt there was no evidence of long term impairment related to the incident at work. Dr. Wilhelmsen indicated that he would not defer to Dr. Daughtery for the purpose of assigning a disability rating and saw no evidence of long term impairment due to the incident on September 28, 1993.
27. Decedent has no permanent partial disability as the result of the alleged incident on September 28, 1993.
28. Decedent's death and the incident of September 28, 1993 are not causally related.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A party claiming benefits under the North Carolina Workers' Compensation Act has the burden of showing that the alleged injury resulted from an accident arising out of and in the scope of his employment. Henry v. A.C. Lawrence LeatherCo., 231 N.C. 477, 57 S.E.2d 760 (1950).
2. In the present case, plaintiff therefore bears the burden of proving that the alleged injury to decedent's right knee occurred as a result of the event occurring on September 28, 1993. There is insufficient evidence of record from which to determine by its greater weight that decedent suffered an actual injury on September 28, 1993. N.C. Gen. Stat. § 97-2(6).
3. A claimant also has the initial burden of proving the existence of a disability and the degree of such disability.Hilliard v. Apex Cabinet, 305 N.C. 593, 290 S.E.2d 682
(1982). In the present case, there is insufficient evidence of record to determine by its greater weight that any disability, either temporary or permanent, could be attributable to an incident on September 28, 1993. See Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
4. Plaintiff bears the burden of proving that decedent's death was causally related to the alleged injury at work.See Henry v. A.C. Lawrence Leather Company, supra. Expert medical testimony is necessary to establish the primafacie case of causal relationship between an event and an alleged injury. See Click v. Pilot Freight Carriers,Inc., 300 N.C. 164, 265 S.E.2d 389 (1980). Slizewski v.International Seafood, Inc., 46 N.C. App. 228,264 S.E.2d 810 (1980). In the present case, there is no expert testimony that decedent's death was in any way related to the alleged injury of September 28, 1993. Decedent's death and the incident of September 28, 1993 are not causally related.
5. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-38.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This ___ day of May 1998.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________ THOMAS J. BOLCH COMMISSIONER
DISSENTING WITHOUT AN OPINION:
S/ _______________ CHRISTOPHER SCOTT COMMISSIONER
DCS:bjp