***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff is Joyce Boone.
2. Defendant-employer is The Gaston Gazette / Freedom Communications, Inc.
3. The servicing agent is Sedgwick James of the Carolinas.
4. An employee-employer relationship existed on June 22, 1999.
5. Plaintiff's average weekly wage is $251.20 yielding a weekly compensation rate of $167.29.
6. The date of the alleged accident is June 22, 1999.
7. Defendant-employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
8. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of documents containing the Pre-Trial Agreement, plaintiff's medical records, Industrial Commission forms, plaintiff's recorded statement and discovery responses.
9. The depositions of Richard Greenberg, M.D., Ph.D. and Per L. Larson, M.D. are a part of the evidentiary record.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 54-year-old woman, born May 27, 1946. Plaintiff has a twelfth grade education. Plaintiff has an employment history of working as a cashier. On November 14, 1994, plaintiff became employed with defendant-employer as a housekeeper vacuuming, cleaning bathrooms, cleaning the lawn of paper, cleaning windows, emptying trash cans, etc. Plaintiff lifted approximately 25 pounds on a regular basis as well as bent and stooped regularly. Plaintiff worked Monday through Friday from 5 a.m. to 2 p.m. Up until the date of plaintiff's injury, plaintiff had perfect attendance while working for defendant-employer. Plaintiff also worked part-time at Gaston Manor as a nurse's aide working eight hours a day each day of the weekend helping to set up the dining room, assisting patients to and from the dining room, helping patients with their showers and dressing, etc. Plaintiff also had perfect attendance at this job.
2. Prior to June 22, 1999, plaintiff had no significant medical problems. She had been treated for elevated blood pressure and cholesterol. Plaintiff also had a history of Bells Palsy which occurred approximately five years before June 22, 1999 and which only caused right-sided facial weakness. Plaintiff had not had any treatment or trouble with this condition since prior to 1996.
3. On June 22, 1999, plaintiff arrived at work at 4:45 a.m. Plaintiff was driven to work by a friend, Dan Baker, as her car was in the shop. Plaintiff was not experiencing any health problems that morning. Plaintiff did not feel any dizziness or unsteadiness on her feet nor had she felt any previously. Plaintiff got coffee and work supplies and began cleaning the dock area and picking up trash. Plaintiff also checked the front parking lot and swept the porch.
4. Part of plaintiff's job with defendant-employer was to get the mail each morning. On the morning of June 22, 1999, Mr. Baker went to the post office for plaintiff because her car was in the shop.
5. At approximately 6 a.m., plaintiff went to the front of the building to wait for Mr. Baker to arrive with the mail. Plaintiff saw Mr. Baker sitting in his truck at the red light in front of the Gazette office. Plaintiff got up and unlatched the front door. To unlatch the door, plaintiff had to stand on her tiptoes to reach up and unlatch the door. Plaintiff opened the front door and was stepping out on to the porch when she fell. Plaintiff did not know exactly what caused her fall but she may have tripped or slipped on the floor mat or metal piece at the doorway on to the porch.
6. Plaintiff was unable to stand after her fall because her legs were numb. Mr. Baker saw plaintiff fall and helped her into the truck, took her home and assisted her into the house.
7. Plaintiff called defendant-employer to report her fall.
8. When plaintiff did not improve, she was taken by Mr. Baker later that day to Gaston Memorial Hospital. Plaintiff was examined there and released; however, plaintiff was unable to walk or stand under her own power, and Mr. Baker took plaintiff directly to Dr. Per Larsen's office.
9. Upon plaintiff's presentation to Dr. Larsen, she was unable to stand, was experiencing numbness from her waist down and when she tried to stand was incontinent.
Dr. Larsen immediately admitted plaintiff to the hospital.
10. Upon plaintiff's admission to Gaston Memorial Hospital, the majority of her treatment was referred to Dr. Richard Greenberg, a board-certified neurosurgeon. At the time Dr. Greenberg initially saw plaintiff, she indicated to him that she had fallen at the Gaston Gazette that morning. At that time, plaintiff could not bend at the knees, could barely move her feet and had loss sensation in her legs. Plaintiff's legs were almost paralyzed. Plaintiff also exhibited increased reflexes and Babinski reflexes which were typical of a spinal cord injury.
Dr. Greenberg was of the opinion that plaintiff had a spinal cord injury with weakness in both legs, bladder dysfunction and incontinence and pain in the back with spastic findings in the lower extremities all of which were consistent with a spinal cord injury.
11. Dr. Greenberg was of the opinion that plaintiff suffered from a disc rupture which had injured her spinal cord, and referred her for a MRI which revealed disc herniation at T11-T12.
12. Plaintiff remained hospitalized at Gaston Memorial Hospital until June 30, 1999 when she was transferred to Charlotte Rehab for inpatient rehabilitation. Plaintiff was released from Charlotte Rehab on August 11, 1999 and was discharged home in a wheelchair with a walker.
13. Thereafter, plaintiff continued to receive outpatient physical therapy at Pro-Active Therapy, Inc. Plaintiff made slow progress following her injury and continued to have great difficulty walking without the assistance of a walker. Plaintiff needed additional physical therapy but was unable to obtain the same.
14. Plaintiff last consulted with Dr. Greenberg on February 1, 2000, approximately eleven months after her injury. At that time, most of the sensation had returned to plaintiff's legs, but she continued to have considerable motor dysfunction and some bowel and bladder dysfunction.
15. As of February 2, 2000, Dr. Greenberg was of the opinion that plaintiff suffered a T11-T12 disc herniation as a result of her June 22, 1999 fall which resulted in a lower thoracic spinal cord injury. Dr. Greenberg was further of the opinion that as a result of plaintiff's fall and resulting lower thoracic spinal cord injury, plaintiff had spastic paraparesis. Dr. Greenberg was of the opinion that although plaintiff made some progress over eight months, she remains disabled from working and it is unlikely that she would recover sufficiently to be employable. Dr. Greenberg was of the opinion that plaintiff could not walk independently without falling, that plaintiff typically needs a walker and at least a cane, that she would be unlikely to be able to drive to get to any employment and that she would have to sit exclusively.
16. Dr. Greenberg is further of the opinion that plaintiff has sustained permanent injury and is totally disabled from being able to do any functional work and that plaintiff will continue in the same condition in the future. Dr. Greenberg was of the opinion that plaintiff needs additional physical therapy and that there is a substantial risk that plaintiff will need physical therapy in the future.
17. Bells Palsy is not a condition that would make plaintiff more inclined to fall. In addition, plaintiff's lumbar degenerative disc disease would not cause plaintiff's Babinski reflexes and spasticity and thus did not cause plaintiff's fall. There is no evidence that plaintiff's fall was caused by any idiopathic condition.
18. Dr. Larsen was of the opinion that plaintiff has sustained a permanent injury to her back and is not and will not be able to perform jobs which she has performed in the past.
Dr. Larsen was further of the opinion that plaintiff's injury was caused by her June 22, 1999 fall at the Gazette.
19. Plaintiff has received $139.00 per month since March 2000 from a disability policy entirely funded by defendant-employer. These payments will continue until plaintiff is 65 years old.
20. On June 22, 1999, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer.
21. As a direct and proximate result of plaintiff's compensable June 22, 1999 injury by accident, plaintiff sustained a spinal cord injury.
22. As a direct and proximate result of her compensable injury by accident, plaintiff was incapable of earning the same wages, which she earned before her injury in the same or in any other employment from June 22, 1999, and continuing.
23. The treatment which plaintiff received for her spinal cord injury was reasonably necessary to effect a cure, give relief or lessen the period of disability, and indeed did so.
24. There is a substantial risk that plaintiff will need future treatment for her spinal injury.
25. Defendant unsuccessfully appealed an Opinion and Award of the Deputy Commissioner that was favorable to plaintiff.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 22, 1999, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Even though the reason for plaintiff's fall that caused her injury is unknown, there is no evidence that plaintiff's fall was in any way caused by an idiopathic condition, and thus, our Courts have found that the fall was an accident arising out of the employment. Slizewski v.International Seafood, Inc., 46 N.C. App. 228 (1980).
3. As a direct and proximate result of plaintiff's compensable June 22, 1999 injury by accident, plaintiff sustained a spinal cord injury. N.C.G.S. § 97-25.
4. As a direct and proximate result of her compensable injury by accident, plaintiff was incapable of earning the same wages which she earned before her injury in the same or in any other employment from June 22, 1999 and continuing. N.C.G.S. § 97-29.
5. Plaintiff is entitled to temporary total disability compensation at the rate of $167.29 per week from June 22, 1999 and continuing until plaintiff returns to work at the same or greater wages or further order of the Commission. N.C.G.S. § 97-29.
6. Plaintiff has received $139.00 per month from March 2000 and will continue to do so until she is 65 years old from an employer-funded disability policy. Defendant-employer is entitled to a deduction of payment therefor. N.C.G.S. § 97-42.
7. The treatment which plaintiff received for her spinal cord injury was reasonably necessary to effect a cure, give relief or lessen the period of disability, and indeed did so. N.C.G.S. § 97-25.
8. There is a substantial risk that plaintiff will need future treatment for her spinal injury. N.C.G.S. § 97-25.1.
9. Plaintiff is entitled to attorney's fees in the amount of $750.00 for defendant's unsuccessful appeal from an Opinion and Award favorable to plaintiff. N.C.G.S. § 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee, defendant shall pay plaintiff compensation at the rate of $167.29 per week from June 22, 1999 and continuing until plaintiff returns to work at the same or greater wages or until further Order of the Commission, subject to a deduction for employer-funded disability plan payments in the amount of $139.00 per month. All accrued amounts shall be paid in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by defendant as follows: 25% of the lump sum shall be deducted and paid directly to plaintiff's counsel and thereafter plaintiff's counsel shall receive every fourth check. Furthermore, defendant shall pay attorney's fees in the amount of $750.00 directly to plaintiff's counsel for defendant's unsuccessful appeal pursuant to N.C.G.S. § 97-88.
3. Defendant shall pay all past and future medical expenses for plaintiff's compensable spinal cord injury as long as the same is reasonably necessary to effect a cure, provide relief or lessen the period of disability.
4. Defendant shall pay the costs, including an expert witness fee in the amount of $300.00 for Dr. Richard Greenberg, if not already paid.
This the ___ day of October 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER