***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for modifications, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured and Companion Property Casualty is the third party administrator.
4. Plaintiff sustained multiple injuries on February 15, 2000 while in Pennsylvania on a trip for defendant-employer.
5. Pursuant to the Form 22, plaintiff's average weekly wage was $344.00, yielding a compensation rate of $229.34.
6. Plaintiff was out of work from February 15, 2000 through May 8, 2000 when he returned to part-time work.
7. Plaintiff returned to full-time duty on July 24, 2000.
8. Industrial Commission Forms 18, 61, 33, and 33R as well as a motion to compel discovery, an order on the motion to compel, three Form 36's and one Form 22 were stipulated into evidence as part of Stipulated Exhibit 1.
9. Plaintiff's responses to defendant's first set of interrogatories were stipulated into evidence as part of Stipulated Exhibit 1.
10. Defendant's answers to plaintiff's first set of interrogatories were stipulated into evidence as part of Stipulated Exhibit 1.
11. The Pennsylvania EMS report relating to the accident on February 15, 2000 was stipulated into evidence as part of Stipulated Exhibit 1.
12. A report from Combined Investigators was stipulated into evidence as part of Stipulated Exhibit 1.
13. Plaintiff's rehabilitation records and plaintiff's medical records were stipulated into evidence as part of Stipulated Exhibit 1.
14. Plaintiff's income verification affidavit and exhibits were stipulated into evidence as Stipulated Exhibit 2.
15. The issues before the Commission are: (i) whether plaintiff sustained a compensable injury by accident on February 15, 2000 arising out of and in the course of his employment with defendant-employer; (ii) if so, what compensation, if any, is due plaintiff; (iii) whether defendant waived defenses for the failure to comply with the Rules of the North Carolina Industrial Commission and applicable North Carolina statutory law; and (iv) whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** EVIDENTIARY RULINGS
The objections raised in the deposition of Craig A. VanDerVeer, M.D., are ruled upon in accordance with the applicable provisions in the law and the Opinion and Award in this case.
Plaintiff filed a motion to strike the recorded statements of Dennis McGoff and Guy Cicconi. The Deputy Commissioner allowed defendant to take the depositions of these two individuals after the hearing. These depositions were not taken by defendant. Therefore, the statements of Dennis McGoff and Guy Cicconi are stricken from the record.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-three years old. Plaintiff had prior experience as a truck driver and a carpenter.
2. Plaintiff was hired by defendant-employer to transport vehicles to various locations. Defendant-employer handled transactions relating to the vehicle and instructed plaintiff where each vehicle was to be delivered.
3. Plaintiff worked on a regular basis as a truck driver for defendant-employer for over ten years.
4. Plaintiff derived approximately 25% of his income from his work with defendant-employer. Plaintiff also was self-employed in carpentry work and in a furniture business.
5. On February 15, 2000 plaintiff was delivering a Chevrolet Suburban to Pennsylvania. Ricky Hopkins rode with plaintiff to deliver the vehicle to Tinicum Township located on the outskirts of Philadelphia, Pennsylvania. About 30-40 minutes before they arrived at the delivery site, plaintiff and Mr. Hopkins stopped to get breakfast at a Burger King.
6. Upon arrival at the delivery site, plaintiff was unable to unload the Suburban because the hydraulics system used to unload vehicles from the trailer was not working properly. The last thing plaintiff remembers was that he was sitting on the passenger side of the Surburban leaning out of the window as he adjusted the hydraulics system in an attempt to get the ramp up. The next time plaintiff was conscious, he was in the hospital. Plaintiff has no memory of the accident and there were no witnesses to the accident.
7. Plaintiff's coworker Mr. Hopkins described what occurred after plaintiff got out of the Suburban. Plaintiff instructed Mr. Hopkins to beat on the ramp to try to get it to release. When nothing happened, plaintiff began working on the hydraulic cylinder in the back of the trailer and began beating on the ramp. Mr. Hopkins was in the front of the truck and could not see what plaintiff was doing. After beating on the ramp, plaintiff complained of feeling weak and dizzy. Mr. Hopkins gave plaintiff a piece of candy because he thought the candy might make plaintiff feel better. Mr. Hopkins also stated that plaintiff's speech was not normal. Mr. Hopkins went to the cab of the truck to get a cigarette, leaving plaintiff leaning against a fence. When Mr. Hopkins returned, plaintiff was lying unconscious on the ground, having a seizure. Mr. Hopkins summoned medical assistance and plaintiff was taken from the scene of the accident by the Essington Fire Company EMS to Taylor Hospital Emergency Department. Plaintiff was examined by medical personnel who determined plaintiff was suffering from a skull fracture.
8. Plaintiff was transferred from Taylor Hospital to Crozer-Chester Medical Center for treatment for an epidural hematoma and a parietal skull fracture, a laceration to the scalp, impact seizure activity following the head trauma and traumatic ecchymosis of the eye.
9. Plaintiff had difficulty remaining fully conscious after his arrival at Crozer-Chester Medical Center. Plaintiff was confused and had garbled speech. Plaintiff was examined by the medical personnel at the Crozer-Chester Medical Center and it was determined plaintiff had an epidural hemotoma and a right side partial skull fracture.
10. Michael Stanley, M.D., treated plaintiff at Crozer-Chester Medical Center. Dr. Stanley performed a craniomity and evacuation operation on February 16, 2000. Dr. Stanley removed and did not replace small fragments of the skull, leaving a subtemporal decompression of plaintiff's skull.
11. Plaintiff was ultimately diagnosed by the medical personnel at the Crozer-Chester Medical Center with a right epidural hematoma, a left frontal contusion and a skull fracture.
12. On February 20, 2000 plaintiff was discharged from Crozer-Chester Medical Center and he returned to North Carolina.
13. On February 23, 2000 plaintiff was seen by Craig A. VanDerVeer, M.D., of Carolina Neurosurgery Spine for follow up care.
14. Dr. VanDerVeer continued to provide postoperative care for plaintiff. Dr. VanDerVeer reviewed the results of an EEG and plaintiff's medical records and determined there was no demonstration of any abnormal activity, which ruled out the possibility that plaintiff had an epileptic fit causing him to fall.
15. Plaintiff last saw Dr. VanDerVeer on May 3, 2000. As of that date plaintiff reached maximum medical improvement and Dr. VanDerVeer released plaintiff to normal activities without any restrictions. Plaintiff returned to part-time work with defendant-employer on May 8, 2000. Plaintiff continued to perform part-time work until he returned to full duty on July 24, 2000.
16. Plaintiff left the job with defendant-employer after making two or three trips. He testified that he was unable to continue driving the truck for defendant-employer because the shaking and bouncing of the truck caused headaches. Plaintiff also testified that because of the accident, he was scared and did not want to continue driving the truck.
17. After leaving defendant-employer, plaintiff continued taking carpentry jobs and working in the furniture business. He also took a local driving job for Carolina Plumbing for several months.
18. Defendant argues that plaintiff's fall was due to an idiopathic condition of hypoglycemia. However, there is insufficient evidence of record to prove by the greater weight that plaintiff suffers from hypoglycemia or that such a condition may have caused plaintiff's fall. There is no evidence of record that the one prior reported incident in 1995 in which plaintiff felt weak was caused by hypoglycemia. Testing of plaintiff did not demonstrate an increase in blood glucose and plaintiff has never been diagnosed with hypoglycemia.
19. Dr. VanDerVeer indicated plaintiff's injury is consistent with falling from some height. He stated that "to produce this type of an injury in an adult male, if someone has a seizure and falls over, they tend to collapse first. . . . They don't tend to fall over. And you would have a hard time generating the force factors necessary to do this simply on dropping."
20. As the result of the injury by accident, plaintiff was unable to perform any work or earn any wages from February 15, 2000 until May 3, 2000.
21. Defendant failed to comply with North Carolina Industrial Commission Rules and did not file a Form 19 or a Form 61.
22. Defendant has not defended this action without merit.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. For an injury to be compensable under the Workers' Compensation Act, the injury must be caused by an accident, sustained in the course of and arising out of the employment. N.C. Gen. Stat. § 97-2(6); Hollarv. Furniture Co., 48 N.C. App. 489, 269 S.E.2d 667 (1980). In the case at bar, the fall itself was the unusual, unforeseen occurrence which constitutes an accident and it is undisputed that the injury was sustained in the course of plaintiff's employment. Taylor v. Twin CityClub, 260 N.C. 435, 132 S.E.2d 865 (1963); Robbins v. Hosiery Mills,220 N.C. 246, 17 S.E.2d 20 (1941). Therefore, the only issue to be resolved is whether the injury arose out of plaintiff's employment.
2. The Supreme Court explained the rule in unexplained-fall cases inTaylor v. Twin City Club and stated that an injury arises out of the employment:
 "when it occurs in the course of the employment and is a natural and probable consequence or incident of it, so that there is some causal relation between the accident and the performance of some service of the employment. [citation omitted] An injury arises out of the employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a natural result of one of the risks of the employment; the injury must spring from the employment or have its origin therein. . . . If a fall and the resultant injury arise solely from an idiopathic cause, or a cause independent of the employment, the injury is not compensable. [citation omitted] But the effects of a fall are compensable if the fall results from an idiopathic cause and the employment has placed the employee in a position which increases the dangerous effects of the fall." Id. at 438-439, 132 S.E.2d at 868.
3. The cause of plaintiff's fall in this case is unknown. Plaintiff has no memory of the fall, and there were no witnesses to the fall. There is insufficient evidence to support a finding that the injury was caused by an idiopathic condition. There is no evidence that any force or condition independent of the employment caused or contributed to plaintiff's fall. The greater weight of the evidence shows that at the time of the accident, plaintiff was where he was required to be in order to deliver the automobile, that he was engaged in the duties of his employment or some activity incident to the employment, that he was exposed to the risks inherent in his work environment and related to his employment, and that the only active force involved was plaintiff's exertion in the performance of his duties. Therefore, on February 15, 2000 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6); Taylor v. Twin City Club, supra; Robbins v. Hosiery Mill,supra; Slizewski v. Seafood, Inc., 46 N.C. App. 228, 264 S.E.2d 810
(1980).
4. As the result of his compensable injury by accident on February 15, 2000, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $229.34 per week from February 15, 2000 until May 3, 2000 when he reached maximum medical improvement and was released to return to work with no restrictions. N.C. Gen. Stat. § 97-29; Harrington v. Adams-Robinson Enterprises, 349 N.C. 218,504 S.E.2d 786 (1998).
5. Plaintiff is entitled to receive medical treatment for his compensable injury by accident. N.C. Gen. Stat. § 97-25.
6. Defendant failed to file a Form 19 and a Form 61 in a timely manner. Defendant violated the Workers' Compensation Act and the Rules of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-18;North Carolina Industrial Commission Rule 802.
7. Defendant has not defended this action without merit. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, plaintiff is entitled to total disability compensation at the rate of $229.34 per week from February 15, 2000 through May 3, 2000. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved in Paragraph 3.
2. Defendant shall pay all medical expenses resulting from plaintiff's compensable injury by accident on February 15, 2000.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Defendant shall pay the costs, including a $250.00 fine for the failure to comply with the North Carolina Workers' Compensation Act and the Rules of the North Carolina Industrial Commission. Said penalty shall be paid to the North Carolina Industrial Commission.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN