***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury by accident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and employer-defendant.
3. The Fireman's Fund Insurance Company was the carrier on the risk.
4. Plaintiff's average weekly wage is to be determined by the Industrial Commission Form 22 (wage chart).
5. Medical records from L. Andrew Goad, DDS, Leslie Cargile, MD, Jeffrey Tait, MD, Terrence McGee, MD, Mission St. Joseph's Health System, Asheville Cardiology Associates, Asheville Radiology, Asheville Imaging, J. Matheson, MD, Rocko E. Patt, CMT, and Robert E. Powell, MD, and the depositions of L. Andrew Goad, DDS, Leslie Cargile, MD, and Jeffrey Tait, M.D. are a part of the evidentiary record.
 ***********
Based upon all of the evidence produced at the hearing, the undersigned makes the following:
 FINDINGS OF FACTS
1. Plaintiff, who was fifty years old at the time of the hearing before the Deputy Commissioner, has a high school education and two (2) college degrees in business administration or management.
2. On November 1, 1997, plaintiff was employed by defendant-employer as a property unit leader where his primary job was supervising the maintenance crew. Plaintiff supervised a crew of three (3) to ten (10) members, depending on the time of year. Plaintiff's primary responsibility was supervision of the care of campgrounds, trails, campuses and housing on the Christian Center's property. Specifically, plaintiff was responsible for landscaping, designing flowerbeds, maintenance of the grounds, hiring and firing personnel, and formulating and implementing yearly budgets. Plaintiff also had discretionary authority to use defendant-employer's credit in buying supplies.
3. On June 17, 1998, plaintiff sustained an injury arising out of and in the course and scope of his employment at the Ridgecrest Conference Center, a subsidiary of defendant-employer. Plaintiff was injured when attempting to open a garage bay door using a quarter-inch metal rod approximately three (3) feet long as a lever to pull back the door's lock. The rod dislodged itself and hit plaintiff in the head, on the left side of the face, between his ear and jaw.
4. After the injury, plaintiff was seen by Dr. Leslie Cargile on June 18, 1998 for complaints of left-sided face pain. X-rays taken of the facial area were normal. Plaintiff was diagnosed with a left cheek contusion and released to return to work. However, on June 30, 1998, plaintiff returned to Dr. Cargile, complaining of pain in front of his left ear and of a sore throat and fever. A CT scan of the facial area was performed, which was normal. Dr. Cargile did not remove plaintiff from work, but instead released him to work without any anticipation of permanent partial disability.
5. Plaintiff returned to work with defendant-employer and with the exception of a few days, worked continuously in his regular-duty capacity from June 17, 1998 through February 1, 2000.
6. During this time, plaintiff was treated by his family physician, Dr. Jeffrey Tait. Dr. Tait had treated plaintiff and his mother since 1994 and, in fact, had diagnosed both of them with fibromyalgia. Plaintiff received continued treatment from 1994 through the date of injury for complaints of neck pain and headaches. The last examination by Dr. Tait prior to the compensable injury by accident was on May 21, 1998. Dr. Tait's May 21, 1998 examination and his initial examination following the injury by accident were virtually the same regardless of the fact that Dr. Tait noted an exacerbation of plaintiff's fibromyalgia on July 3, 1998. Plaintiff experienced limited range of motion of the neck and discomfort at the extremes during both examinations. It was not until approximately three (3) months later in September 1998 that Dr. Tait noted muscle spasm and tightness through the left side of plaintiff's neck and discomfort along the back of plaintiff's neck on the left side. Dr. Tait's opinion was that the work-related injury by accident had caused local trauma to the left side of the face and temporomandibular joint ("TMJ") and that plaintiff's injury by accident on June 17, 1998, somewhat contributed to the exacerbation of plaintiff's pre-existing neck pain. However, Dr. Tait did not believe the work accident aggravated plaintiff's fibromyalgia.
7. On April 27, 1999, plaintiff treated with L. Andrew Goad, DDS for TMJ problems and head and neck complaints. Plaintiff's hearing testimony regarding the lack of prior TMJ problems is not credible in light of Dr. Goad's initial intake interview of plaintiff and a review of medical records from Dr. J. Matheson dated December 23, 1997, which document earlier treatment of plaintiff's TMJ on the left side of his head. In addition to head and neck complaints, plaintiff presented to Dr. Goad with complaints of fatigue, tinnitus, visual disturbances, lower back pain, numbness of the hands, shoulder pain, shoulder stiffness and tingling of the hands or fingers. These additional complaints were not caused or aggravated by the injury by accident on June 17, 1998.
8. Dr. Goad's opinion was that plaintiff's complaints of headaches, jaw aching, and neck pain were, at least, aggravated by the compensable injury by accident. However, Dr. Goad deferred the issue of plaintiff's fibromyalgia to Dr. Tait.
9. On August 24, 1999, plaintiff was severely assaulted by a police officer for resisting arrest when he was stopped by a police barricade. After a verbal confrontation, plaintiff was choked around the neck by a police officer, pulled out of his car, and then slammed to the ground. According to plaintiff, the police officer put his boot on the right side of plaintiff's face, pinning the left side of his face to the asphalt with such force as to leave an impression of the officer's boot on the right side of plaintiff's face. The injuries sustained in the assault were severe enough to require Dr. Tait to order additional treatment and diagnostic testing of plaintiff's neck, including an MRI, steroidal injections, and a referral to a neurosurgeon, all of which had not been recommended immediately following the work-related accident of June 1998. As a result of the assault, plaintiff experienced increased pain in the neck and muscles around the spine. Dr. Tait and Dr. Goad agreed that the assault by the police officer could have contributed to the chronic nature of plaintiff's neck pain and prolonged his TMJ recovery. Eyewitness accounts from co-employee, Bob Parker, confirmed that following the assault by the police officer, plaintiff's symptoms became worse. However, plaintiff continued to physically perform his position, without restrictions or accommodations.
10. In light of plaintiff's pre-existing conditions and his subsequent assault in August of 1999, plaintiff's treating physicians were unable to determine to what extent if any plaintiff's injury at work caused him disability. Furthermore, any opinion that plaintiff's pre-existing fibromyalgia was aggravated by the injury by accident is given very little weight when taken in the context of the totality of the evidence.
11. On February 1, 2000, plaintiff was terminated due to an escalating dispute he had with another department supervisor of defendant-employer. During plaintiff's exit interview, his temper flared to the point he had to be accompanied off the premises by Security Officer Kent Barnes. While being escorted off the property, plaintiff stated, "I'll get even". Thereafter, in the summer of 2002, shortly after plaintiff was terminated, Mr. Barnes had a conversation with plaintiff at a local flea market. Plaintiff told Mr. Barnes that he was going to sue defendant-employer to get even. Plaintiff's testimony regarding the extent of his disability is not credible.
12. Plaintiff worked continuously, with few exceptions, from June 17, 1998, through February 1, 2000, and was not disabled during that time. Furthermore, plaintiff was terminated on February 1, 2000, for reasons unrelated to his workers' compensation injury. Plaintiff has not sought employment since February 1, 2000.
13. Plaintiff would have earned wages beyond February 1, 2000, but for his constructive refusal of gainful employment with defendant-employer. Although Dr. Tait had completed an Application for Credit Disability Insurance on July 27, 2000, holding plaintiff out of work, it was Dr. Tait's testimony that throughout his treatment of plaintiff, he simply left it up to plaintiff as to whether or not plaintiff went to work. Prior to the February 1, 2000 termination, plaintiff never requested that Dr. Tait excuse him from work. In addition, Dr. Goad did not remove plaintiff from work at any time, including the last visit on April 10, 2001.
 ***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 17, 1998, plaintiff sustained an injury by accident, arising out of and in the course and scope of his employment with defendant-employer. N.C. Gen. Stat. § 97-2.
2. On February 1, 2000, plaintiff was terminated for conduct unrelated to his compensable injury by accident, for which a non-disabled employee would ordinarily have been terminated. Plaintiff's misconduct constitutes a constructive refusal to perform the work provided. Seagraves v. AustinCo. of Greensboro, 472 S.E.2d 397 (1996).
3. Plaintiff has the burden of proving disability and its extent as caused by the June 17, 1998, injury by accident; however, beyond February 1, 2000, plaintiff has failed to prove by the greater weight of the evidence that his inability to work, if any, is due to his work-related disability. Williams v. Pee Deceased Employee Electric Corp.,502 S.E.2d 645 (1998); Hilliard v. Apex Cabinet Co., 290 S.E.2d 682
(1982).
4. Furthermore, based upon the greater weight of the hearing testimony, the deposition testimony of Dr. Andrew Goad, Dr. Leslie Cargile, Dr. Jeffrey Tait, and the stipulated medical records, plaintiff has failed to prove that his continued complaints are causally related to his June 17, 1998 injury by accident. Slizewski v. InternationalSeafood, Inc., 264 S.E.2d 810 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation benefits beyond February 1, 2000, is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER