***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms with some modifications, the Opinion and Award of the Deputy Commissioner. The Full Commission has further considered and determined the Plaintiff's request for attorney fees under N.C. Gen. Stat. § 97-88.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act.
2. On September 6, 2006, an Employer-Employee relationship existed between the parties.
3. On said date the Employer-Defendant was an insured Employer and the carrier was ESIS Risk Management.
4. On said date the Employee-Plaintiff had an average weekly wage of $369.14.
 *********** ISSUES
The issues before the Deputy Commissioner were:
 A. Did the Employee-Plaintiff sustain a compensable injury by accident or specific traumatic incident as alleged?
 B. If so, to what benefits, if any, is the Employee-Plaintiff entitled to recover?
 C. If so, whether the Defendant is entitled to a credit for the short-term disability paid to the Plaintiff following her alleged injury by accident?
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The Plaintiff was born on April 23, 1950. She graduated from Enka High School in Buncombe County in 1968. Within days of her graduation, she began employment with the Employer-Defendant on June 10, 1968. She has remained continuously employed by the *Page 3 
Employer-Defendant since her date of hire working as a coffee shop/lunch counter employee at Eckerds.
2. As of September 6, 2006, the Plaintiff was 56 years of age, and had in excess of 38 years of service in her employment for the Employer-Defendant. On and before September 6, 2006, the Plaintiff was the coffee shop/lunch counter manager at the Eckerd Drug Store facility located on Merrimon Avenue in Asheville. During her more than 38 years of service to the Employer-Defendant, the Plaintiff had never had an on-the-job injury prior to September 6, 2006.
3. As coffee shop/lunch counter manager, the Plaintiff's job duties include, but are not limited to the following: ordering food and supplies sufficient to serve customers breakfast and lunch, Monday through Saturday; preparing the lunch counter for service of meals; waiting on customers; preparing meals; serving the meals; cleaning up the lunch counter following each customer's meal; disposing of waste; cleaning of dishes and utensils following meal time; acting as cashier for receiving payment from customers; and performing all other related duties in connection with operating the coffee shop/lunch counter. The above-described employment duties of the Plaintiff encompass the duties of several different types of employment positions in the food service industry, including, but not limited to, serving as a hostess, a waitress, a cook, a "busboy," a dishwasher, a janitor, and a cashier. The Plaintiff's employment places her in a position unique to the average person, either in another food-industry job, or elsewhere. More particularly, the Plaintiff's employment requires her to multi-task in a fast-paced setting unlike the typically relaxed setting of a home, or of an employment setting in which the employee is required to do only one (1) of the Plaintiff's many employment-related tasks. *Page 4 
4. The lunch counter area is in the shape of an elongated horseshoe, with most of the counter along the length of the horseshoe housing the grill/cooking/food preparation area, and the other elongated portion of the horseshoe, as well as base of the horseshoe accommodating 22 stools at which customers can be seated. The area along the lunch counter where the customers are seated also includes additional workspace and the cash register used by the Plaintiff to accept payment from customers for their meals. From time to time, the Plaintiff has an additional employee to assist her in operating the lunch counter.
5. The interior length of the lunch counter is approximately 34 feet long, and the working floor area between the two elongated sides of the lunch counter is approximately three (3) to three and one-half (3 ½) feet wide. At the open end of the horseshoe shape of the lunch counter, there is a doorway leading into a storage room where food and supplies are kept. The floor area consists of a reddish brown tile, with three (3) floor drains.
6. Prior to September 6, 2006, the Plaintiff was in good health, and had no medical conditions that affected her equilibrium or sense of balance. She had no condition that affected the full use of her legs. She did have a prior back injury approximately three (3) years earlier when she strained her back helping to remove her nephew from a car seat. She had no missed work related to that occurrence and had fully recovered from the back strain that resulted.
7. On September 6, 2006, the Plaintiff did not have assistance and was performing the lunch counter duties alone. During the late morning of September 6, 2006, while attending to her normal duties in the operation of the lunch counter, the Plaintiff walked to the location of a customer, Ms. Beverley Joan Gaines, seated on one of the stools at the lunch counter. She received payment for a meal from Ms. Gaines, walked to the cash register to place the customer's money in that register, and obtained change for the customer. She turned and started *Page 5 
walking back toward Ms. Gaines to hand the customer the change when the Plaintiff testified that she started "going forward. That's when I tried to catch the counter, and then I guess when I grabbed for the counter, I kind of twisted around and I landed on my backside." Ms. Gaines, who has been a regular customer of the Plaintiff for at least 15 years, testified that she observed the Plaintiff, albeit only from the waist up, "stumble and start down," then reach "for the counter to catch herself with her right hand," and then "she knocked over the napkin holder and all the other things that are right there." Ms. Gaines further testified that she observed the Plaintiff "pitch forward" prior to her fall, leading her to believe that she may fall forward on her face or knees; however, "she evidently turned somehow . . . as she was reaching for the edge of the counter and landed in the other direction." The subsequent fall to the floor ultimately resulted in the injuries described herein.
8. The Plaintiff's job requires that she move constantly within the work area, going back and forth between customers, the grill, other food preparation and storage areas, the sink and cleaning areas, the cash register, and other portions of the work area. Her work requires that she move the full length and width of the lunch counter area in order to attend to her normal duties, frequently turning, twisting, leaning, bending over, stooping, reaching, and performing related movements.
9. A video disc from a surveillance camera overlooking the lunch counter, which was provided by the Defendant-Employer, depicts the Plaintiff's activities immediately prior to, during, and immediately after the fall. That disc illustrates the Plaintiff's activities for approximately two and one-half (2 ½) minutes preceding the fall, during the fall itself, and approximately one (1) minute after the fall. That video disc documents that during the two and one-half (2 ½) minutes prior to the fall, the Plaintiff either went from a stationary position to a *Page 6 
moving position somewhere behind the lunch counter, or else changed her direction of movement as she worked behind the lunch counter no less than 19 times. That level of activity is typical for the Plaintiff. Based upon 19 such movements in a two and one-half (2 ½) minute period, she would average 456 such movements during the course of a normal working hour, and 3,648 such movements over the course of an eight (8) hour day.
10. At the request of her attorney, the Plaintiff wore a pedometer while working during the last three (3) days prior to the hearing, herein, for the purpose of determining the approximate number of steps she takes in the work place during the workday. On May 17, 18, and 19, 2007, she averaged 6,998 steps during each workday while performing her duties. That amount of movement is consistent with her typical workday.
11. Immediately after the fall, personnel from the main area of the drug store came to the Plaintiff's assistance. A pharmacist asked her whether she had anything to eat that morning and whether she felt dizzy prior to the fall. She reported that she had, in fact, eaten breakfast and that she did not feel dizzy prior to the fall.
12. After the fall, the Plaintiff checked the floor to see if there was any noticeable substance on the floor which might have caused her to slip, but she found none.
13. The Plaintiff does not know why she fell. She testified that she did not slip, and was not certain whether she might have tripped. She also testified that she did not faint, did not lose consciousness, did not feel dizzy prior to the fall, and did not feel anything unusual before, during, or after the fall, except for the impact of the fall itself.
14. At the time of the fall, the Plaintiff started to fall forward, reached to support herself on the lunch counter, turned as she was falling, and landed on her buttocks. *Page 7 
15. Following the September 6, 2006 fall, the Plaintiff went directly to ProMed Minor Emergency Center in Asheville, where she saw Dr. H.L. Clinton, Jr. He assessed lumbar strain, ordered X-rays, and directed that the Plaintiff go to Mission Hospital in Asheville for a CT scan of the lumbar spine. That CT scan revealed a mild acute compression fracture of L3. Dr. Clinton took the Plaintiff out of work.
16. At a follow up visit on September 9, 2006, Dr. Clinton authorized light duty work beginning that day, but there was no light duty work available. In succeeding office visits, Dr. Clinton moved back the date upon which the Plaintiff could resume regular duty.
17. On October 21, 2006, Dr. David F. Ward (Dr. Clinton's partner) authorized plaintiff to return to work four (4) hours per day. On that date, Dr. Ward also recommended physical therapy. At a visit on October 28, 2006, Dr. Ward noted that physical therapy had not begun due to the fact that the workers' compensation claim had been denied. The Plaintiff returned to work on a part-time basis on or about October 24, 2006.
18. At a return visit on November 4, 2006, Dr. Ward referred the Plaintiff to Dr. K. Craig Boatright, an orthopedic surgeon practicing with Spine Carolina in Asheville.
19. On November 18, 2006, Dr. Ward increased the allowable workday to five (5) hours, still with restrictions.
20. The Plaintiff began physical therapy at Care Partners on November 22, 2006.
21. On November 29, 2006, the Plaintiff saw Dr. Boatright for the first visit, at which time his impression was "compression fracture L3, compatible with a history of fall at work on 09/06/2006." Dr. Boatright ordered an MRI, directed that physical therapy cease until he could assess the MRI, and continued the Plaintiff on her work restrictions. *Page 8 
22. An MRI of the lumbar spine was performed on December 6, 2006, confirming the fracture at L3, and showing posterior annular tears at L1-2 and L4-5.
23. At a return visit to Dr. Boatright on December 27, 2006, the Plaintiff was authorized to return to physical therapy. On that date, Dr. Boatright stated in his notes, "I believe that this was clearly an on the job injury. There was no antecedent pain, by her report. She has had significant back pain since the time of the injury, 100% concordant with our findings which are very objective based upon our imaging studies. This job (sic) clearly occurred while on the job and I believe beyond a reasonable medical doubt that this is a workers' compensation issue and an on the job injury."
24. At her next follow up treatment on February 7, 2007, Dr. Boatright again continued the light duty restrictions, allowing the Plaintiff to work only five (5) hours per day.
25. At a follow up with Dr. Ward on February 12, 2007, the five (5) hour workday was continued, but was increased to six (6) hours per day on March 12, 2007.
26. The Plaintiff then returned to Dr. Boatright on March 19, 2007, at which time he concurred in the six (6) hour workday limit. He further stated in his medical notes, "I think that this was clearly an on the job injury."
27. Following the hearing before the Deputy Commissioner, the Plaintiff returned to see Dr. Boatright on June 4, 2007. His office notes from this visit state, "I think that it is difficult to know what the long term issues are here." He further noted that the Plaintiff's condition was improving steadily. He directed that the Plaintiff return in three (3) months.
28. The Plaintiff returned to Dr. Ward for a visit on June 6, 2007. In his office note, Dr. Ward indicated that he would like Dr. Boatright to comment on the Plaintiff's permanent *Page 9 
restrictions and degree of disability. Dr. Ward authorized the Plaintiff to return to full-duty work, but with no lifting over 25 pounds without assistance.
29. Dr. Boatright has not yet determined that the Plaintiff has reached maximum medical improvement, and no permanent partial disability rating has been assigned.
30. Following her work-related injury, the Plaintiff was capable of some very restricted duty work as of September 9, 2006, but the Defendant-Employer was unable to accommodate her restrictions. Since Plaintiff was still employed by Defendant-Employer and no work was available that she could perform due to her injury, she was, therefore, temporarily totally disabled from September 7, 2006 through October 23, 2006. Beginning October 24, 2006, the Plaintiff was released to light duty work with limited working hours, which the Defendant-Employer could accommodate, and so she returned to work. The Plaintiff was temporarily partially disabled from October 24, 2006 through June 4, 2007, when Dr. Ward authorized her to return to full-duty work with restrictions.
31. Although the Plaintiff has been diagnosed with lumbar arthritis and degenerative disc disease, the Full Commission finds that the Plaintiff did not suffer from any idiopathic condition as of September 6, 2006, which either caused or contributed to the actual fall itself on that date.
32. On September 6, 2006, the Plaintiff sustained an injury due to an accidental fall arising out of and in the course of her employment. The Plaintiff's fall constituted an unlooked for and untoward event, which was not expected or designed by her, and which interrupted her usual work routine.
33. There is insufficient evidence to establish that any cause independent of the Plaintiff's employment contributed to the fall on September 6, 2006. *Page 10 
34. The nature of the Plaintiff's employment, which entails profuse multi-tasking in a fast-paced setting, moving constantly within the work area, including, going back and forth between customers, the grill, other food preparation and storage areas, the sink and cleaning areas, the cash register, and other portions of the work area, as well as her frequent turning, twisting, leaning, bending over, stooping, reaching, and performing related movements, and the thousands of steps during each workday, all constitute a risk or hazard unique to the Plaintiff's employment, and distinct from the usual, ordinary activities of daily life.
35. The Plaintiff received short-term disability benefits in the amount of $1,190.66 for the period from September 7, 2006 through October 22, 2006 through a program fully funded by the Defendant-Employer.
36. The Full Commission finds that neither of the parties presented any evidence supporting an assessment of attorney's fees and/or costs pursuant to N.C. Gen. Stat. § 97-88.1. However, based on the issues involved, Defendants' defense of this claim was reasonable.
37. The Full Commission finds that the Defendant-Insurer brought the instant appeal to the Full Commission. The Full Commission herein is affirming the findings of fact, conclusions of law and award of the Deputy Commissioner and ordering Defendants to make payment of benefits to the Plaintiff. Therefore, the Full Commission in its discretion finds that Plaintiff should be awarded a reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88 as a part of the costs of the appeal.
38. Upon review of the Plaintiff's Attorney Fee Affidavit, the Full Commission finds that the Plaintiff's attorney spent a total of 30.3 hours in preparation for and defense of the instant appeal. The Full Commission further finds that an hourly rate of $ 150.00 is reasonable, given the nature, circumstances, and complexity of the instant appeal. Therefore, the Defendant *Page 11 
shall pay the Plaintiff's attorney a reasonable attorney fee in the amount of $ 4,545.00 as a part of the costs of the appeal.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Plaintiff sustained a compensable injury by accident arising out of and during the course of her employment with the Defendant-Employer when she fell while at work on September 6, 2006. N.C. Gen. Stat. § 97-2(6).
2. A fall is usually regarded as an accident for workers' compensation purposes. Cole v. Guilford County and Hartford Acc. Indem. Co.,259 N.C. 724, 131 S.E.2d 308 (1963). Where an employee, acting in the course of employment, falls and sustains an injury, the absence of evidence of any unusual or untoward condition or occurrence that caused the fall does not preclude the recovery of compensation, since the fall is the "accident," within the meaning of the Workers' Compensation Act.Robbins v. Bossong Hosiery Mills, 220 N.C. 246, 17 S.E.2d 20 (1941). InSlizewski v. International Seafood, Inc., the North Carolina Court of Appeals, quoting Taylor v. Twin City Club, noted:
 It has been suggested that this result in unexplained-fall cases relieves claimants of the burden of proving causation. We do not agree. The facts found by the Commission in [these cases] permit the inference that the fall had its origin in the employment. There is no finding that any force or condition independent of the employment caused or contributed to the accident. The facts found indicate that, at the time of the accident, the employee was within the orbit of duty on the business premises of the employer, . . . engaged in the duties of . . . employment or some activity incident thereto, . . . exposed to the risks inherent in his work environment and related to his employment, and the only active force involved was the employee's exertions in the performance of his duties. *Page 12 Slizewski v. International Seafood, Inc., 46 N.C. App. 228, 232-233, 264 S.E.2d 810, 813 (1980), quoting, Taylor v. Twin City Club, 260 N.C. 435, 132 S.E.2d 865 (1963).
3. However, if an idiopathic condition played a role in the fall, the workers' compensation claimant would be entitled to compensation only if risks attributable to his employment contributed to the fall, and if the cause of the fall remained unexplained, the Industrial Commission could award compensation only if it found that the incident giving rise to the fall was a risk or hazard incident to the claimant's employment.Janney v. J.W. Jones Lumber Co., Inc., 145 N.C. App. 402, 550 S.E.2d 543
(2001).
4. In this case, the Full Commission concludes that the Plaintiff sustained a fall of unknown origin. Applying the reasoning set forth inRobbins, supra, the Plaintiff's fall was an "accident," although there is an absence of evidence of any unusual or untoward condition or occurrence that caused the fall. Robbins, 220 N.C. 246, 17 S.E.2d 20
(1941). Rather, the fall is the "accident," within the meaning of the Workers' Compensation Act. Id.
5. The Full Commission concludes that the Plaintiff was in reasonably good health at the time of her fall, and did not suffer from any idiopathic mental or physical condition at the time of her fall which would either cause or contribute to the fall.
6. Based upon the holding of Janney v. J.W. Jones Lumber Co.,Inc., since the Plaintiff did not fall due to any type of idiopathic condition, the Full Commission need not make any findings or conclusions concerning whether the particular risks or hazards attributable to the Plaintiff's employment either caused or contributed to the Plaintiff's fall. Janney, 145 N.C. App. 402, 550 S.E.2d 543 (2001). Nevertheless, the Full Commission further concludes that the Plaintiff's employment did, in fact, include certain risks and hazards that, at a minimum, contributed to the Plaintiff's fall. Specifically, but not by way of limitation, the Full Commission *Page 13 
concludes that the nature of the Plaintiff's employment, which entails profuse multi-tasking in a fast-paced setting, moving constantly within the work area, including, going back and forth between customers, the grill, other food preparation and storage areas, the sink and cleaning areas, the cash register, and other portions of the work area, as well as her frequent turning, twisting, leaning, bending over, stooping, reaching, and performing related movements, and the thousands of steps during each workday, all constitute a risk or hazard unique to the Plaintiff's employment, and distinct from the usual, ordinary activities of daily life. These risks and/or hazards caused or contributed to the Plaintiff's September 6, 2006 fall at work.
7. The Plaintiff has established disability, and is entitled to compensation as a result of her injury by accident. N.C. Gen. Stat. §§ 97-29 and 97-30.
8. The Plaintiff has proven by the greater weight of the evidence that as a result of her injury by accident, she was initially removed from work by her doctor from September 6 2006, through September 9, 2006; and, that although Dr. Clinton authorized her to return to very restricted light duty work beginning September 9, 2006, no such work was available. Since Plaintiff was still employed and capable of performing only very restricted light duty work due to her injury, it would have been futile for her to look for work. Therefore Plaintiff was temporarily totally disabled from working from September 6, 2006, through October 23, 2006. Plaintiff has presented medical evidence establishing that she was only capable of part-time, light-duty work from October 24, 2006, until June 4, 2007 and was temporarily partially disabled during this period. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982); Russell v. Lowe's Products Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
9. The Plaintiff is entitled to medical compensation for treatment incurred or to be incurred, and resulting from the compensable injury, as is reasonably necessary to effect a cure, *Page 14 
provide relief, or lessen the period of disability. The Plaintiff has not reached maximum medical improvement. N.C. Gen. Stat. § 97-25.
10. The Defendants shall not receive a credit for the short term disability benefits paid to the Plaintiff for the period September 7, 2006 through October 22, 2006. N.C. Gen. Stat. § 97-42.
11. In the discretion of the Full Commission Plaintiff shall be awarded attorney's fees under N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The Defendants shall pay the Plaintiff temporary total disability benefits at the compensation rate of $246.10 per week for the period of time beginning September 6, 2006 and extending through October 23, 2006, subject to the attorney's fee and the credit awarded, below.
2. The Defendants shall pay the Plaintiff temporary partial disability benefits for the period of time beginning October 24, 2006 and extending through June 4, 2007, at the rate of sixty-six and two-thirds percent of the difference between her average weekly wages before the injury and the wages she actually earned during this period after her injury, subject to the attorney's fee awarded, below.
3. The Defendants shall pay all medical expenses incurred or to be incurred for treatment related to Plaintiff's compensable injury, for so long as such treatment is reasonably necessary to effect a cure, provide relief, or lessen the Plaintiff's period of disability. *Page 15 
4. The Defendants shall receive a credit for the short-term disability compensation paid to the Plaintiff for the period September 7, 2006 to October 22, 2006.
5. The Plaintiff's counsel is entitled to twenty-five percent (25%) of the benefits awarded to the Plaintiff, herein, which the Defendants shall deduct from the lump sum due the Plaintiff after the disability credit is taken, and pay directly to the Plaintiff's counsel.
6. Additionally, Defendants shall pay to Plaintiff's counsel as a part of the costs of this appeal a reasonable attorney's fee in the amount of $4, 545.00 pursuant to N.C. Gen. Stat. § 97-88.
6. Defendants shall pay the costs.
This the ___ day of April 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ PAMELA YOUNG COMMISSIONER *Page 1