**McCRARY v. KING BIO, INC.**

[225 N.C. App. 378 (2013)]

MITZI McCRARY, Plaintiff

v.

KING BIO, INC., Employer, ISURITY INSURANCE SERVICES/NCME FUND,
Carrier, Defendants

No. COA12-405

Filed 5 February 2013

**Workers' Compensation—compensability—wrist injury—catching frozen package**

A workers' compensation award arising from a hand injury sustained in an effort to catch a large package of frozen bison meat that had slipped was affirmed. The evidence supported the Commission's findings, which in turn supported its conclusions of law with respect to compensability. Plaintiff was not required to present expert testimony in order to make the necessary showing of a causal link between the injury, during which her wrist "popped," and her immediate wrist pain. However, the record contained expert opinion evidence describing the relationship between plaintiff's work-related injury and her subsequent wrist pain. Finally, even if her twenty-year-old pre-existing carpal tunnel syndrome contributed to the pain, that fact would not render her injury noncompensable.

Appeal by defendants from Opinion and Award entered 23 December 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 September 2012.

*Ganly & Ramer, by Thomas F. Ramer, for Plaintiff-appellee.*

*Orbock Ruark & Dillard, PA, by Barbara E. Ruark and Jessica E. Lyles, for Defendant-appellants.*

ERVIN, Judge.

Defendants King Bio, Inc., and Isurity Insurance Services appeal from a Commission order awarding workers' compensation medical benefits to Plaintiff Mitzi McCrary. In challenging the Commission's order, Defendants argue that the Commission erroneously awarded medical benefits to Plaintiff on the grounds that Plaintiff failed to present competent medical evidence to prove that her wrist injury was caused by a workplace accident that occurred on 14 October 2009, and that this Court should rectify this error by simply reversing the Commission's decision rather than requiring further proceedings on

remand. After careful consideration of Defendants' challenges to the Commission's order in light of the record and the applicable law, we conclude that the Commission's order should be affirmed.

## I. Background

### A. Substantive Facts

Defendant King Bio operated King Bio, a homeopathic medical supplier, and Carolina Bison, a supplier of bison meat, at a joint facility. Plaintiff, who was born on 16 September 1955, started working as an inventory and purchasing manager for both entities on 28 August 1998. In the course of its business, Carolina Bison received packages of meat, which were sometimes frozen and which varied in size. One of the duties that Plaintiff performed for Carolina Bison was to assist with the repackaging of meat into smaller packages.

On 14 October 2009, Plaintiff was assisting Bernave Acevedo, a warehouse manager, in repackaging a bison meat order that had a total weight of approximately fifteen hundred pounds and had been separated into twenty-five packages, each of which weighed approximately sixty pounds. After Mr. Acevedo unloaded the packages of meat and placed them on a work table, Plaintiff lifted each package from the work table onto a scale, wiped it down, weighed it, and labeled it. In addition to being heavier and bulkier than usual, the packages which made up this order had been frozen, were slippery and had to be handled using more force and grip than was normally the case.

As Plaintiff was lifting one of the packages of meat onto the scale, it slipped from her hand. As she tried to catch the falling package, Plaintiff felt a "pop" in her wrist and experienced "very intense" pain. Mr. Acevedo, who was facing Plaintiff and located approximately four to five feet away from her, saw the package of meat fall out of Plaintiff's hand, observed Plaintiff try to catch the package, and heard Plaintiff's wrist "pop." Plaintiff told Mr. Acevedo that "she [had] done something to her wrist."

In spite of her injury, Plaintiff worked the remainder of the day with assistance from Mr. Acevedo. On the following day, Plaintiff continued to experience pain in her right wrist and reported her injury to her supervisor. At that point, Plaintiff was given a brace for her wrist.

On 23 October 2009, Plaintiff sought treatment from Sisters of Mercy Urgent Care. On 27 October 2009, Sisters of Mercy Urgent Care

provided Defendant with an "Employee Medical Care Report" which noted that Plaintiff's 14 October 2009 right wrist injury was work related. On 29 October 2009, Plaintiff sought treatment from Dr. Ronald Neimkin, a hand surgeon with Carolina Hand Surgery Associates. At that time, Plaintiff informed Dr. Neimkin that she had undergone bilateral carpal tunnel releases twenty years earlier. After referring Plaintiff to Dr. Terry McGhee for an EMG, nerve conduction studies, and an MR arthrogram in order to determine whether there were any soft tissue tears in her right wrist, Dr. Neimkin released Plaintiff to work subject to certain restrictions. Plaintiff did not miss any work as a result of her wrist injury and has not sought disability compensation.

## B.  Procedural History

On 17 December 2009, Plaintiff filed an Industrial Commission Form 18 asserting a claim for workers' compensation medical benefits on the grounds that she had injured her right hand while "repackaging unusually heavy, frozen meat" on 14 October 2009. On 26 October 2009, Defendants filed a Form 19 in which they reported Plaintiff's injury to the Commission, indicated that Plaintiff had been working with frozen meat when her "wrist popped," and noted that the incident had been "witnessed by [a] fellow employee." On 4 December 2009, Defendants filed a Form 61 in which they denied Plaintiff's claim on the grounds that "no injury by accident occurred within the course and scope of [Plaintiff's] employment" but agreed to pay for "authorized medical treatment through 12/04/2009."[1] On 3 June 2010, Plaintiff filed a Form 33 in which she requested that her claim for medical benefits be set for hearing. Defendants filed a Form 33R response to Plaintiff's request for a hearing in which they alleged, in pertinent part, that:

> . . . [P]laintiff did not suffer an injury to her hand and wrist as a result of an accident in that she was performing her normal work duties in the normal manner at the time that she sustained an injury to her wrist. Defendants further contend that [P]laintiff has not been diagnosed with any condition other than an alleged upper-extremity injury. . . .

On 17 November 2010, Deputy Commissioner Victoria M. Homick conducted a hearing concerning the merits of Plaintiff's claim for

---

1. After Defendants denied her workers' compensation claim, Plaintiff was unable to obtain further medical treatment for her wrist.

workers' compensation medical benefits. On 16 May 2011, Deputy Commissioner Homick entered an order denying Plaintiff's claim, finding, in pertinent part, that "the incident on October 14, 2009 occurred while [P]laintiff was performing her work duties in the normal manner without any unusual circumstance which would constitute an interruption of her job routine" and that "there is insufficient evidence to show that the condition in [P]laintiff's right hand was a result of any work injury that she may have sustained on October 14, 2009." On 23 May 2011, Plaintiff noted an appeal to the Commission from Deputy Commissioner Homick's order.

The Commission heard Plaintiff's claim on 19 October 2011. On 23 December 2011, the Commission, by means of an order entered by Commissioner Bernadine S. Ballance with the concurrence of Commissioner Danny McDonald, reversed Deputy Commissioner Homick's decision and awarded Plaintiff workers' compensation medical benefits. Commissioner Tammy Nance dissented from the order based upon her inability to conclude that Plaintiff had suffered an injury by accident. Defendants noted an appeal to this Court from the Commission's decision.

## II. Legal Analysis

### A. Standard of Review

Appellate review of a Commission order is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law," *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000), with the Commission having sole responsibility for evaluating the weight and credibility to be given to the record evidence. *Id.* (citation omitted). "[F]indings of fact which are left unchallenged by the parties on appeal are 'presumed to be supported by competent evidence' and are, thus 'conclusively established on appeal.' " *Chaisson v. Simpson*, 195 N.C. App. 463, 470, 673 S.E.2d 149, 156 (2009) (quoting *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003)). However, the "Commission's conclusions of law are reviewed *de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted).

"To establish 'compensability' under the North Carolina Workers' Compensation Act (the Act), a 'claimant must prove three elements: (1) [t]hat the injury was caused by an accident; (2) that the injury arose out of the employment; and (3) that the injury was sustained in

the course of employment.' " *Clark v. Wal-Mart*, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). The "claimant in a workers' compensation case bears the burden of initially proving 'each and every element of compensability[.]' . . . by a 'greater weight' of the evidence or a 'preponderance' of the evidence." *Adams v. Metals USA*, 168 N.C. App. 469, 475, 608 S.E.2d 357, 361 (quoting *Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 350, 581 S.E.2d 778, 784 (2003), and *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 541-42, 463 S.E.2d 259, 261 (1995), *aff'd*, 343 N.C. 302, 469 S.E.2d 552 (1996)), *aff'd*, 360 N.C. 54, 619 S.E.2d 495 (2005). In reviewing the Commission's determinations, the Supreme Court has noted that:

> [t]here will be "many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." On the other hand, where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.

*Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (quoting *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E. 2d 753, 760 (1965)). We will now review Defendants' challenge to the Commission's order utilizing the applicable standard of review.

### B. Causation

In their brief, Defendants argue that there is "no competent medical evidence in this case to satisfy Plaintiff's burden of proof that she sustained an injury to her wrist as a result of the incident that . . . occurred on October 14, 2009." We do not find Defendants' argument persuasive.

As a preliminary matter, we note that Defendants have not argued that the record lacks sufficient evidence to support the Commission's determinations that (1) Plaintiff was involved in a workplace accident that occurred in the course and scope of her employment on 14 October 2009; (2) Plaintiff experienced intense pain both immediately after the accident and later; (3) Plaintiff subsequently experienced intermittent numbness to her hand and fingers; and (4) further testing is needed in order to resolve issues such as the specific mechanism that led to Plaintiff's injury and the extent, if any, to which the 14

October 2009 accident may have implicated the carpel tunnel syndrome for which she had received treatment twenty years prior to the accident. Instead, Defendants' challenge to the Commission's decision is focused on the lawfulness of the Commission's determination that the pain that Plaintiff has experienced and continues to experience stemmed from the 14 October 2009 accident.

In its order, the Commission found as fact that:

> 4. On October 14, 2009, Plaintiff was assisting warehouse manager, Bernave Acevedo, in repackaging a bison meat order

> . . . .

> 5. Plaintiff testified that while lifting one of the packages of meat onto the scale, the package began to slip from her hand and as she tried to catch it, she immediately felt a "pop" in her wrist accompanied by "very intense" pain. Plaintiff told Mr. Acevedo that "she [had] done something to her wrist." Mr. Acevedo witnessed the incident. He testified that he was working in the same area as Plaintiff and was about four (4) to five (5) feet away with his head facing her. He observed the package of meat falling out of Plaintiff's hand, observed Plaintiff catching the package and heard Plaintiff's arm "pop." The Full Commission finds the testimony of Plaintiff and Mr. Acevedo regarding how Plaintiff's injury occurred to be credible.

> . . . .

> 7. Susie King, Vice President of King Bio, testified that . . . she had no reason to question the veracity of the information provided to her by Mr. Acevedo . . . [and that] Mr. Acevedo was the best person to know what was received, loaded and unloaded on October 14, 2009[.] . . . The Full Commission gives greater weight to Mr. Acevedo's testimony on the weight of the meat packages on October 14, 2009 over any contrary evidence.

> . . . .

> 9. After her injury, Plaintiff worked the remainder of the day with assistance from Mr. Acevedo. Due to continuing pain in her right wrist, Plaintiff reported her

injury to her supervisor on October 15, 2009 and was given a brace for her wrist.

10. Plaintiff sought treatment from Sisters of Mercy Urgent Care on October 23, 2009. According to the medical notes from that visit, she reported a right wrist injury after pulling/packing meat on October 14, 2009. . . .

11. On October 27, 2009, Sisters of Mercy Urgent Care provided Defendant-Employer with an "Employee Medical Care Report." The report noted that Plaintiff's right wrist injury on October 14, 2009 was work related. . . .

12. On October 29, 2009, Plaintiff sought treatment from Dr. Ronald Neimkin, a hand surgeon with Carolina Hand Surgery Associates. According to Dr. Neimkin's notes, [after the incident,] . . . Plaintiff began experiencing right wrist pain with swelling, numbness and tingling of the right hand with pain being a seven (7) out of ten (10). Plaintiff informed Dr. Neimkin that she had undergone bilateral carpal tunnel releases twenty (20) years prior. Dr. Neimkin diagnosed her with possible carpal tunnel syndrome and possible cervical radiculopathy. He was also concerned that Plaintiff might have a possible ligament tear or triangular fibrocartilage tear of her right wrist. He referred Plaintiff to Dr. Terry McGhee for an EMG and nerve conduction studies and an MR arthrogram to help delineate whether there were any soft tissue tears in her right wrist. . . .

. . . .

15. After considering all of the evidence presented, the Full Commission gives less weight to Plaintiff's recorded statement and to the descriptions of how the injury occurred found in medical records, than to Plaintiff's testimony at [the] hearing before the Deputy Commissioner which is corroborated by the eye witness testimony of Mr. Acevedo.

. . . .

17. On November 13, 2009, Plaintiff presented to Dr. Glen Gaston, an orthopedic surgeon. His medical notes indicated that Plaintiff began to experience ulnar

sided right wrist pain radiating into her elbow and with intermittent numbness to her hand and fingers after handling frozen meat packages at work on October 14, 2009. . . . He diagnosed Plaintiff as having ulnar nerve carpal impaction with some diffuse pain and numbness with a history of bilateral carpal tunnel release. Dr. Gaston recommended an ulnocarpal joint injection and . . . administered an injection of Celestone and Lidocaine in the ulnocarpal joint[.]. . .

18. On February 16, 2010, Plaintiff returned to Dr. Ronald Neimkin, with continued complaints of pain in her right wrist on the ulnar side, radiating to her thumb with constant numbness and tingling in all of her digits. . . . Dr. Neimkin again recommended EMG studies and an MR Arthrogram.

19. On the issue of causation, in a March 10, 2010 letter, Dr. Gaston opined that, "while her work did not cause her ulnocarpal impaction; it very likely did cause the acute pain associated with it." Dr. Gaston further opined that[,] based on Plaintiff's ongoing right wrist pain, he would recommend an MRI to test for a possible concomitant TFCC tear.

. . . .

23. The Full Commission finds as fact that Plaintiff has proven that her injury occurred as the result of an accident. When the slippery, frozen package of meat unexpectedly slipped out of Plaintiff's hand on October 14, 2009, and she sustained an injury to her wrist as she tried to catch it, this slipping incident constituted an unlooked for and untoward event, which was an interruption of Plaintiff's normal work routine and was, thus, an accident under the Workers' Compensation Act. Therefore, Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on October 14, 2009.

24. Based upon a preponderance of the evidence, the Full Commission finds that Plaintiff's right wrist pain on the ulnar side, radiating to her thumb, with numbness and tingling in all of her digits, is causally related to her injury by accident on October 14, 2009. No

doctors were deposed; however, the medical records from Sisters of Mercy Urgent Care indicated that the right wrist injury Plaintiff sustained on October 14, 2009 was work related. Dr. Gaston also noted that Plaintiff's acute pain in her right wrist is "very likely" work related. Additionally, Plaintiff testified, and the Full Commission finds as fact, that as a result of the accident, she immediately felt immense pain in her right wrist and has had right wrist pain, numbness and tingling since that time. Plaintiff has not reached maximum medical improvement from her injury.

25. As a result of her injury, Plaintiff needs further diagnostic testing to evaluate and determine whether the ulnocarpal impaction, the possible TFCC tear, and other suspected right wrist conditions are causally related to her injury.

We conclude that the evidence supports the Commission's findings, which in turn support its conclusions of law with respect to the compensability issue.

In urging us to reach a contrary conclusion, Defendants argue that this case "involves a complicated medical issue for which an expert medical opinion is required" and that "[t]he facts of this case are sufficiently complex as to require expert opinion on medical causation." In support of this assertion, Defendants cite several cases holding that expert medical evidence was required to establish a causal relationship between an accident or injury and the specific diagnosis proffered by a claimant. However, each of the decisions upon which Defendants rely involves conditions which are clearly beyond the diagnostic capabilities of an ordinary layperson. For example, in *Click*, in which the plaintiff sought compensation for a herniated disc, the Supreme Court noted the "difficulty of pinpointing the precise causative factors [underlying] disc injuries" and held that expert medical evidence was required to establish the cause of the claimant's herniated disc. *Click*, 300 N.C. at 168, 265 S.E.2d at 391. *See also, e.g., Holley v. ACTS, Inc.*, 357 N.C. 228, 233-34, 581 S.E.2d 750, 753-54 (2003) (deep vein thrombosis), and *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230-33, 538 S.E.2d 912, 915-17 (2000) (fibromyalgia).

In this present case, unlike those upon which Defendants rely, the Commission did not conclude that Plaintiff suffered from a specific disease that could only be diagnosed based upon information con-

McCRARY v. KING BIO, INC.

[225 N.C. App. 378 (2013)]

tained in expert medical testimony. Instead, the Commission found, in essence, that the accident during which Plaintiff's wrist "popped" caused the pain she was experiencing.[2] Defendants have not cited any authority in support of the proposition that a workplace accident that is followed by and appears to immediately result in severe pain is not compensable unless or until a specific medical diagnosis is made. Instead, the appellate courts in this jurisdiction have indicated that there is no need for expert medical testimony in order to establish a link between a work-related accident and the plaintiff's current condition in circumstances similar to the one at issue here.

For example, in *Click*, 300 N.C. at 168-69, 265 S.E.2d at 392 the Supreme Court stated that "the 'distinguishing features' of most compensation cases holding [that] medical testimony [would be] unnecessary to make a *prima facie* case of causation include '[a]n uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved' " coupled with " 'the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury' ") (quoting *Uris v. State Compensation Dept.*, 247 Or. 420, 426, 427 P.2d 753, 756 (1967)). *See also Slizewski v. Seafood, Inc.*, 46 N.C. App. 228, 233-35, 264 S.E.2d 810, 813-14 (1980) (holding that "the evidence was sufficient to support the Commission's finding of fact that the hematoma caused brain damage rendering the plaintiff a partial hemiplegic and reducing his visual capabilities" given that, "[p]rior to the fall, plaintiff was a healthy young man with no history of seizures, paralysis or visual disability;" that the plaintiff "went into convulsions which continued after he was admitted to the hospital" "[a]s soon as [he] fell landing directly on his head;" and that a physician testified that, "the day after the fall, . . . plaintiff was completely unconscious, had some movement on his right side but had no movement of his left arm and leg and had a complete left hemiplegia"). As a result, given that the situation at issue here was "uncomplicated," that Plaintiff's wrist pain appeared "immediately" after the accident and has continued since that time, that one of Plaintiff's co-workers observed the accident and corroborated Plaintiff's account of the cir-

---

2. The parties appear to agree that further testing is required to identify the precise mechanism implicated by Plaintiff's "popped" wrist; however, having denied Plaintiff's request for additional medical treatment after 4 December 2009, Defendants have limited Plaintiff's ability to obtain any additional testing necessary to explain the reason that Plaintiff was continuing to experience wrist pain.

McCRARY v. KING BIO, INC.

[225 N.C. App. 378 (2013)]

cumstances surrounding her injury, that Plaintiff promptly reported the injury to her superiors and sought medical treatment, and that Plaintiff did not have any pain in her wrist prior to the injury, we conclude that Plaintiff was not required to present expert testimony in order to make the necessary showing of a causal link between the injury and her wrist pain in this case.[3]

Furthermore, even if expert testimony concerning the causal relationship between Plaintiff's 14 October 2009 accident and the intense pain that Plaintiff experienced immediately after trying to grab the falling meat packet were necessary for a finding of compensability, we note that the Commission found that Dr. Gaston addressed "the issue of causation" in a letter and stated that Plaintiff's work "very likely did cause the acute pain associated with" Plaintiff's ulnocarpal impaction. Although Defendants contend that this letter does not constitute competent causation-related evidence because it was written in response to a letter asking for an opinion concerning the relationship between Plaintiff's general working conditions and a possible occupational disease, Dr. Gaston clearly characterized Plaintiff's injury in the letter in question by stating that:

> [Plaintiff] had an injury to her wrist while at work on October 14, 2009 when she had immediate ulnar-sided wrist pain. . . . Sub-sequently, her work comp case was denied. The patient has questions concerning whether or not this truly is a work related injury.

> . . . .

As a result, the record does, in fact, contain expert opinion evidence describing the relationship between Plaintiff's work-related injury and her subsequent wrist pain.

Finally, Defendants direct our attention to evidence tending to show that, some twenty years before the accident, Plaintiff was treated for carpel tunnel syndrome. The record does not, however, contain any evidence tending to show that Plaintiff suffered from carpel tunnel syndrome at any time after the conclusion of that treatment. Moreover, according to well-established North Carolina law:

---

3. Although Defendants argue that Plaintiff has failed to satisfy the requirements for relying on non-expert testimony bearing on the causation issue on the grounds that her prior treatment of carpal tunnel syndrome showed that she was not in good health and free from a disability of the wrist prior to her injury, the record contains, as we note elsewhere, no indication that Plaintiff was experiencing any wrist-related difficulty at or at any recent time before the date that she was injured.

**McCRARY v. KING BIO, INC.**

[225 N.C. App. 378 (2013)]

In workers' compensation actions the rule of causation is that where the right to recover is based on injury by accident, the employment need not be the sole causative force to render an injury compensable.

"[If the employee] by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury."

*Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981) (quoting *Vause v. Equipment Co.*, 233 N.C. 88, 92, 63 S.E. 2d 173, 176 (1951)). As a result, even if preexisting carpal tunnel syndrome contributed to the pain that Plaintiff suffered as a result of the accident, that fact would not render her injury noncompensable.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that none of Defendants' challenges to the Commission's order have merit.[4] As a result, the Commission's order should be, and hereby is, affirmed.

AFFIRMED.

Judges ROBERT N. HUNTER, JR., and McCULLOUGH concur.

---

4. Having declined to reverse the Commission's order on compensability-related grounds, we need not reach Defendants' argument concerning the extent, if any, to which we should order further proceedings on remand in light of the Commission's alleged error.